## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICH AND LESLIE STRUZYNSKI AND RACHEL WULK, individual and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VERIZON NEW JERSEY INC. AND VERIZON ONLINE LLC,<br><br>Defendants. | Civil Action No.<br><br>**NOTICE OF REMOVAL** |

TO:  THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

Defendants Verizon New Jersey Inc. and Verizon Online LLC (collectively, "Defendants"), pursuant to 28 U.S.C. § 1441, hereby remove this action to this Court from the Superior Court of New Jersey, Camden County.  This action is within the original jurisdiction of this Court and properly removed based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332, 1446, and 1453.  Pursuant to 28 U.S.C. § 1446(d), copies of this Notice of Removal will be served upon counsel for Plaintiffs Rich and Leslie Struzynski (the "Struzynskis") and Rachel Wulk (together with the Struzynskis, "Plaintiffs") and filed with the Clerk of the New Jersey Superior Court for the County of Camden, as an exhibit to a Notice to State Court of Removal to Federal Court.  A copy of the Notice being filed in state court is attached (without exhibits) as Exhibit A.

### PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL

1.    On July 21, 2017, Plaintiffs commenced this action by filing a putative class action Complaint against the Defendants in the Superior Court of New Jersey, Camden County, captioned *Sturzynski v. Verizon New Jersey Inc., et al.*, Case No. L-2903-17.

2.    Defendants were served on July 31, 2017.  The Complaint is the initial pleading setting forth the claim for relief upon which this action is based.  Accordingly, this Notice is timely pursuant to 28 U.S.C. § 1446(b).  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon Defendants in this action are attached to this Notice as Exhibit B.

3.    The Superior Court of New Jersey, Camden County, is located within the District of New Jersey.  28 U.S.C. § 110.  This Notice of Removal is therefore properly filed in this Court pursuant to 28 U.S.C. § 1441(a).

## ALLEGATIONS OF THE COMPLAINT

4.    This is a putative class action on behalf of Plaintiffs and other FiOS customers of Verizon.

5.    Plaintiff alleges, *inter alia*, that Verizon required its FiOS customers to lease multiple "set-top boxes", "digital adapter", and/or "CableCARD device" to utilize FiOS programing on multiple televisions but that more than one set-top box is not technologically required in order to access FiOS programing on multiple televisions, and that Verizon does not disclose to its customers the alleged availability of third-party alternatives to leasing Verizon set-top boxes.  (Compl. ¶¶ 2-5);

6.    Plaintiff seeks to represent the following putative class:  "All New Jersey citizens who are current or former customers of Verizon, who purchased FiOS service, and who have paid rental charges, installation fees, and any other expenditures to Verizon for the installation, maintenance, and/or use of more than one Verizon-supplied STB, digital adapter, or CableCARD at any time from July 2012 to present."  (*Id*. ¶ 59.)

7.    On behalf of Plaintiffs and the putative class, the Complaint attempts to state claims for:  (1) violations of the New Jersey Consumer Fraud Act ("NJCFA"); (2) the New Jersey

Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"); and (3) injunctive relief. (*Id*. ¶¶ 66-127.)

8.    The Complaint seeks, *inter alia*, (1) "actual and statutory damages for each instance of unfair or deceptive conduct"; (2) "actual and statutory damages for each instance of Verizon's illegal conduct"; (3) declaratory and injunctive relief; (4) treble damages; (5) attorneys' fees and costs; and (6) interest.  (*Id*. at pp. 29-43.)

9.    Defendants dispute Plaintiffs' allegations, deny that the Complaint has merit, deny that the Class is certifiable, and deny that Plaintiff or the putative class has been harmed in any way.

## BASIS FOR REMOVAL

10.    This action is within the original jurisdiction of this Court, and removal is proper under CAFA, which grants district courts original jurisdiction over putative class actions, involving over 100 putative class members, where any member of the putative class of plaintiffs is a citizen of a State different from any defendant, and in which the amount in controversy in the aggregate exceeds $5 million.  As set forth below, this action satisfies each of the requirements of § 1332(d)(2) for original jurisdiction under CAFA.

**Putative Class Action.**

11.    This action meets the CAFA definition of a class action, which is "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure."  28 U.S.C. §§ 1332(d)(1)(B), 1453(a) & (b).  Plaintiff seeks certification of a class under N.J. Court Rule 4:32-1, *et seq*., New Jersey's analog to Fed. R. Civ. P. 23.  (*See* Compl. ¶ 58.)

**Class Consisting of More than 100 Members.**

12.    Upon information and belief, there are more than 100 New Jersey citizens who are current or former FiOS customers of Verizon and who have paid rental charges for the use of more than one Verizon-supplied set-top box, digital adapter, or CableCARD.

13.    According to Verizon's records, during one month (July 2017) of the claimed class period, approximately 601,631 FiOS customers leased more than one set-top box in connection with their FiOS services in New Jersey.

14.    Upon information and belief, based on an analysis of the names and service addresses, and publicly available records indicative of the citizenship (*e.g.*, voter registration in New Jersey, ownership of property in New Jersey, driver's license issued by New Jersey) of a small portion of those 601,631 New Jersey customers, at least 600 customers are citizens of New Jersey and thus are putative class members. *See Krasnov v. Dinan*, 465 F.2d 1298, 1301 (3d Cir. 1972); *Smith v. Honeywell Int'l Inc.*, No. 10-cv-3345 (ES), 2013 WL 2181277, at *4 (D.N.J. May 20, 2013) ("The district court may make 'a reasonable assumption' of CAFA's citizenship requirements from evidence that indicates the 'probable citizenship of the proposed class'.").

15.    Accordingly, the aggregate number of members of the proposed class is greater than 100 persons for purposes of 28 U.S.C. § 1332(d)(5)(B).

**CAFA Diversity.**

16.    The required diversity of citizenship under CAFA is satisfied because "any member of a class of Plaintiffs is a citizen of a State different from any Defendant." 28 U.S.C. § 1332(d)(2)(A).

17.    Defendant Verizon Online LLC is a Delaware limited liability company, with its principal place of business in Virginia.  Accordingly, Verizon Online LLC is a citizen of Delaware and Virginia.

18.    As discussed above (¶ 14, *supra*), at least 100 members of the putative class are citizens of New Jersey.

19.    These members of the putative class are not citizens of the same states as Verizon Online LLC.  Accordingly, at least one proposed class member is a citizen of a state different from a defendant, thus satisfying the minimal diversity requirements of 28 U.S.C. § 1332(d)(2)(A).

**Amount in Controversy.**

20.    Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. §§ 1332(d)(2), (d)(6).  Without conceding any merit to the Complaint's allegations or causes of action, the amount in controversy satisfies this jurisdictional threshold because under Plaintiffs' theories of recovery the amount in controversy exceeds $5 million.

Rental Charges Alleged By Plaintiffs and the Putative Class

21.    The Complaint alleges that, "Verizon charges its customers a minimum of $12.00 per month for the first television [set-top box], and a minimum of $10.00 per month for each additional television [set-top box]."  (Compl., ¶ 30.)

22.    Plaintiffs further allege that, "[t]he Struzynskis have been Verizon FiOS customers since at least April 2010, and currently rent three (3) Verizon-supplied STBs for use in their home, and three (3) Verizon-supplied digital adapters, for a total of approximately $51.94 in monthly fees (exclusive of any additional installation, administrative, and other fees charged by Verizon in relation to these rentals)."  (*Id*. at ¶ 9.)

23.    The Struzynskis' statement attached to the Complaint lists one set-top box for $7.99, two additional set-top boxes for $19.98, and three digital adapters for $23.97.  Thus, the

monthly amount allegedly paid by the Struzynskis for additional set-top boxes and digital adapters (beyond the first set top box) is $46.95 ($19.98 + $23.97).

24.    Plaintiffs allege that the Struzynskis were FiOS customers for the entire length of the putative class period (July 2012 to the present) (at least 61 months).

25.    Thus, Plaintiffs claim that the Struzynskis overpaid at least approximately $2,680.95 to rent multiple unnecessary set-top boxes and/or digital adapters.

26.    Plaintiffs have asserted claims under the NJCFA, which provides for a "refund of all moneys acquired by means of any [unlawful] practice," as well as treble damages and attorneys' fees.  N.J.S.A. § 56:8-2.11, 19.

27.    Thus, Plaintiffs allege that damages for the Struzynskis' NJCFA claim are at least approximately $8,042.85 ($2,680.95 x 3).

### Statutory Damages Under the TCCWNA

28.    Plaintiffs also seek statutory damages pursuant to N.J.S.A. § 56:12-17 for violations of the TCCWNA.  (Compl. at pp. 25, 28, 30.)  Pursuant to N.J.S.A. § 56:12-17, a court may award to the aggrieved consumer "a civil penalty of not less than $100.00 or for actual damages, or both  . . . ."

29.    Plaintiffs allege at least four violations of the TCCWNA, seeking at least $400 in civil penalties.  (Compl., Counts II-VI.)

### Amount in Controversy

30.    Based on the allegations in the Complaint, Plaintiffs allege that the Struzynskis' total damages claim is $8,442.85 ($8,042.85 + $400).

31.    Plaintiffs further allege that the Struzynskis' claim is "typical" of the putative class members' claims.  (*Id*. at ¶ 61.)

32. As discussed above (¶ 14, *supra*), upon information and belief, the putative class is comprised of at least 600 individuals.

33. Accordingly, the amount in controversy exceeds the $5 million threshold required by CAFA ($8,442.85 x 600 = $5,065,710).

34. Plaintiffs also seek a declaratory judgment. (Compl., Count VII.) The value of this relief also counts towards the amount in controversy. *See Spock v. David*, 469 F.2d 1047, 1052 (3d Cir. 1972) ("In cases where there is no adequate remedy at law, the measure of jurisdiction is the value of the right sought to be protected by injunctive relief").

35. For purposes of removal "the question is not what damages the Plaintiff will recover, but what amount is 'in controversy' between the parties.'" *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 448 (7th Cir. 2005) ("That the Plaintiff may fail in its proof, and the judgment be less than the threshold (indeed, a good chance that the Plaintiff will fail and the judgment will be zero) does not prevent removal."). While Defendants dispute that they are liable to Plaintiffs or the putative class, or that Plaintiffs or the putative class suffered any injury or incurred damages in any amount whatsoever, or that any class is certifiable, for purposes of satisfying the jurisdictional prerequisites of CAFA, the matter in controversy exceeds $5 million.

**No Joinder Necessary.**

36. Defendants Verizon New Jersey Inc. and Verizon Online LLC jointly file this notice of removal. No other defendants have been identified by Plaintiffs and no other defendants are required to consent to removal based on CAFA. 28 U.S.C. § 1453(b).

**RESERVATION OF RIGHTS AND DEFENSES**

37. By filing this Notice of Removal, Defendants do not waive any defenses that may be available to them and reserve all such defenses. In addition, Defendants do not waive their right to compel arbitration of this dispute pursuant to the parties' contract, nor do Defendants

concede that Plaintiffs states any claim upon which relief can be granted, or that Plaintiffs are entitled to any relief of any nature.  Nonetheless, Plaintiffs' claims, as pleaded in the Complaint at the time of removal, "whether well or ill founded in fact, fixes the right of the defendant to remove."  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 202 U.S. 283, 294 (1938).

38.    If any challenges to the propriety of the removal of this action arise, Defendants respectfully request the opportunity to present oral argument and/or additional evidence.

WHEREFORE, Defendants hereby remove this Action to this Court from the Superior Court of New Jersey, Camden County.

> */s/Philip R. Sellinger*
> Philip R. Sellinger
> Eric D. Wong
> GREENBERG TRAURIG, LLP
> 500 Campus Drive, Suite 400
> Florham Park, New Jersey 07932
> (973) 360-7900
> (973) 301-8410 (fax)
>
> *Attorneys for Defendants*
> *Verizon New Jersey Inc. and*
> *Verizon Online LLC*

Philip R. Sellinger
Attorney ID: 032871982
Eric D. Wong
Attorney ID: 018972007
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
(973) 360-7900 (Telephone)
*Attorneys for Defendants*
*Verizon New Jersey Inc. and*
*Verizon Online LLC*

| | |
|---|---|
| **EXHIBIT** | |
| **A** | |

RICH AND LESLIE STRUZYNSKI AND
RACHEL WULK, individual and on behalf of
all others similarly situated,

                    Plaintiffs,

        v.

VERIZON NEW JERSEY INC. AND
VERIZON ONLINE LLC,

                    Defendants.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CIVIL PART
CAMDEN COUNTY

DOCKET NO. CAM-L-2903-17
CIVIL ACTION

**NOTICE OF FILING OF**
**NOTICE OF REMOVAL**

To:    Clerk of the Court
       Camden County Court House
       Hall of Justice
       101 South Fifth Street
       Camden, NJ 08103-4001

        Pursuant to 28 U.S.C. § 1446(d), Defendants Verizon New Jersey Inc. and Verizon

Online LLC (collectively, "Defendants") caused to be filed with the United States District Court

for the District of New Jersey a Notice of Removal of this action from this Court to the United

States District Court for the District of New Jersey. A copy of the Notice of Removal is attached

as Exhibit 1.

1

GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
(973) 360-7900
*Attorneys for Defendants*
*Verizon New Jersey Inc. and*
*Verizon Online LLC*


By: _____
    Philip R. Sellinger


Dated: August 28, 2017

2

EXHIBIT
B

## SUMMONS

Attorney(s) David S. Senoff, Esq., Hillary B. Weinstein, Esq.

Office Address  Anapol Weiss

Town, State, Zip Code  130 N. 18th Street, Suite 1600

            Philadelphia, PA 19103

Telephone Number  (215) 735-1130

Attorney(s) for Plaintiff Rich and Leslie Struzynski and Rachel Wulk

Rich and Leslie Struzynski and

Rachel Wulk

      Plaintiff(s)

    vs.

Verizon New Jersey, Inc. and Verizon

Online, LLC

      Defendant(s)

## Superior Court of New Jersey

Camden     County

Law     Division

Docket No:

## CIVIL ACTION
## SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

                                      _Michelle Smith_
                                      Clerk of the Superior Court

DATED:

Name of Defendant to Be Served:  Verizon Online LLC

Address of Defendant to Be Served:  1 Verizon Way, Basking Ridge, NJ 07920

/443

CAMDEN COUNTY
SUPERIOR COURT
HALL OF JUSTICE
CAMDEN                    NJ 08103

COURT TELEPHONE NO. (856) 379-2200
COURT HOURS   8:30 AM - 4:30 PM

TRACK ASSIGNMENT NOTICE

DATE:    JULY 25, 2017
RE:      STRUZINSKI VS VERIZON NEW JERSEY INC
DOCKET:  CAM L -002503 17

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 1.

DISCOVERY IS    150 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS:  HON ANTHONY M. PUGLIESE

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM         301
AT:   (856) 379-2200 EXT 3080.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH   R.4:5A-2.

ATTENTION:       ATT: DAVID S. SENOFF
                 ANAPOL WEISS
                 1040 KINGS HIGHWAY NORTH
                 SUITE 304
                 CHERRY HILL        NJ 08034-1925

JUANIS

Appendix XII-B1

( ) Cash  (✓) Check

| CIVIL CASE INFORMATION STATEMENT (CIS) | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|
| | PAYMENT TYPE: ☐ CK ☐ CG ☐ CA  Fee Paid & Entered |
| | CHG/CK NO.  JUL 21 2017 |
| Use for Initial Law Division<br>Civil Part pleadings (not motions) under *Rule* 4:5-1<br>**Pleading will be rejected for filing, under *Rule* 1:5-6(c),<br>if information above the black bar is not completed<br>or attorney's signature is not affixed** | AMOUNT:  $ 6487 |
| | OVERPAYMENT:  Amount $ 250<br>Batch # B916 |
| | BATCH NUMBER: |

| ATTORNEY / PRO SE NAME<br>David S. Senoff | TELEPHONE NUMBER<br>(215) 735-1130 | COUNTY OF VENUE<br>Camden |
|---|---|---|
| FIRM NAME  (If applicable)<br>Anapol Weiss | | DOCKET NUMBER (when available)<br>L - 2903-17 |
| OFFICE ADDRESS<br>130 N. 18th Street, Suite 1600<br>Philadelphia, PA 19103 | JUL 21 2017 | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND   ☒ YES   ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Rich Struzynski, Leslie Struzynski,<br>and Rachel Wulk | CAPTION<br>Rich and Leslie Struzynski, et al. v. Verizon New Jersey, Inc., et al. |
|---|---|

| CASE TYPE NUMBER<br>(See reverse side for listing)<br>999 | HURRICANE SANDY<br>RELATED?<br>☐ YES   ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES   ☒ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW<br>REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|---|
| RELATED CASES PENDING?<br>☐ Yes   ☒ No | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ Yes   ☒ No | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY  (if known)<br>☐ NONE<br>☒ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR<br>RECURRENT RELATIONSHIP?<br>☒ YES   ☐ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE   ☐ FRIEND/NEIGHBOR   ☐ OTHER (explain)<br>☐ FAMILIAL   ☒ BUSINESS |
|---|---|

DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☒ YES   ☐ No

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR
ACCELERATED DISPOSITION

As this matter is a Putative Consumer Class Action, Plaintiffs believe that the case warrants individual management and
180 days of discovery.

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ YES   ☒ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?<br>☐ YES   ☒ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be
redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:   *David S. Senoff*

**Side 2**



# CIVIL CASE INFORMATION STATEMENT
## (CIS)
### Use for initial pleadings (not motions) under *Rule 4:5-1*

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
151   NAME CHANGE
175   FORFEITURE
302   TENANCY
399   REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502   BOOK ACCOUNT (debt collection matters only)
505   OTHER INSURANCE CLAIM (including declaratory judgment actions)
506   PIP COVERAGE
510   UM or UIM CLAIM (coverage issues only)
511   ACTION ON NEGOTIABLE INSTRUMENT
512   LEMON LAW
801   SUMMARY ACTION
802   OPEN PUBLIC RECORDS ACT (summary action)
999   OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
305   CONSTRUCTION
509   EMPLOYMENT (other than CEPA or LAD)
599   CONTRACT/COMMERCIAL TRANSACTION
603N  AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
603Y  AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
605   PERSONAL INJURY
610   AUTO NEGLIGENCE – PROPERTY DAMAGE
621   UM or UIM CLAIM (includes bodily injury)
699   TORT – OTHER

**Track III - 450 days' discovery**
006   CIVIL RIGHTS
301   CONDEMNATION
602   ASSAULT AND BATTERY
604   MEDICAL MALPRACTICE
606   PRODUCT LIABILITY
607   PROFESSIONAL MALPRACTICE
608   TOXIC TORT
609   DEFAMATION
616   WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617   INVERSE CONDEMNATION
618   LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
156   ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303   MT. LAUREL
508   COMPLEX COMMERCIAL
513   COMPLEX CONSTRUCTION
514   INSURANCE FRAUD
620   FALSE CLAIMS ACT
701   ACTIONS IN LIEU OF PREROGATIVE WRITS

**Multicounty Litigation (Track IV)**
271   ACCUTANE/ISOTRETINOIN
274   RISPERDAL/SEROQUEL/ZYPREXA
281   BRISTOL-MYERS SQUIBB ENVIRONMENTAL
282   FOSAMAX
285   STRYKER TRIDENT HIP IMPLANTS
286   LEVAQUIN
287   YAZ/YASMIN/OCELLA
289   REGLAN
290   POMPTON LAKES ENVIRONMENTAL LITIGATION
291   PELVIC MESH/GYNECARE

292   PELVIC MESH/BARD
293   DEPUY ASR HIP IMPLANT LITIGATION
295   ALLODERM REGENERATIVE TISSUE MATRIX
296   STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS
297   MIRENA CONTRACEPTIVE DEVICE
299   OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR
300   TALC-BASED BODY POWDERS
601   ASBESTOS
623   PROPECIA
624   STRYKER LFIT CoCr V40 FEMORAL HEADS

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

**Please check off each applicable category**    ☒ Putative Class Action    ☐ Title 59

ANAPOL WEISS
BY: DAVID S. SENOFF, ESQ. (NO. 049721992)
HILLARY B. WEINSTEIN, ESQ. (NO. 032732008)
ONE LOGAN SQUARE
130 N. 18TH STREET, SUITE 1600
PHILADELPHIA, PA 19103
PHONE: (215) 790-4550
FAX: (215) 875-7733
DSENOFF@ANAPOLWEISS.COM
HWEINSTEIN@ANAPOLWEISS.COM

ATTORNEYS FOR PLAINTIFFS AND
THE CLASS

JUL 21 2017

| | |
|---|---|
| RICH AND LESLIE STRUZYNSKI<br>903 DENSTON ROAD<br>WEST DEPTFORD, NJ 08086-3831,<br><br>AND<br><br>RACHEL WULK,<br>270 CRESTMONT TERRACE<br>COLLINGSWOOD, NJ 08108-1304,<br><br>INDIVIDUALLY AND ON BEHALF OF ALL<br>OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFFS,<br><br>V.<br><br>VERIZON NEW JERSEY, INC.<br>1 VERIZON WAY<br>BASKING RIDGE, NJ 07920<br><br>AND<br><br>VERIZON ONLINE LLC<br>1 VERIZON WAY<br>BASKING RIDGE, NJ 07920<br><br>DEFENDANTS. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br><br>CAMDEN COUNTY<br><br>DOCKET NO: L-2903-17<br><br>**CIVIL ACTION - CLASS ACTION**<br><br>COMPLAINT WITH JURY TRIAL<br>DEMAND AND DESIGNATION OF<br>TRIAL COUNSEL |

## CLASS ACTION COMPLAINT

Plaintiffs Rich and Leslie Struzynski (the "Struzynskis") and Rachel Wulk (collectively, "Plaintiffs"), individually and upon behalf of all others similarly situated, by and through their attorneys, Anapol Weiss, allege as follows based upon personal knowledge as to themselves and

their own acts and experiences, and as to all other matters, based upon information and belief, including investigation conducted by their attorneys, the undersigned.

## INTRODUCTION

1.     This Class Action is brought by Plaintiffs on behalf of a Class consisting solely of equipment rental practices and policies of Defendants Verizon New Jersey, Inc. ("Verizon NJ") and Verizon Online LLC (collectively, "Verizon" or the "Verizon Defendants").

2.     Verizon has misrepresented—and continues to misrepresent—to its New Jersey customers that they must lease a separate, **Verizon-supplied** "set-top box" ("STB"),[1] "digital adapter,"[2] and/or "CableCARD device"[3] for each and every television that will be used to access Verizon FiOS[4] programming within the same household.

3.     Despite Verizon's flagrant misrepresentations regarding its equipment rental program, a multitude of "technical equipment alternatives" ("TEAs")[5] are readily available that

---

[1] Also referred to colloquially as "cable boxes," STBs are a technological holdover from the days of analog transmission: "In the days of analog TV, cable boxes descrambled the premium channels and managed the high channel numbers old TVs did not support. For today's digital service, the cable box decodes MPEG video frames, decrypts the premium channels and stores and displays the program guides. Also providing upstream communications for video-on-demand, digital cable boxes often have a built-in DVR for recording content on a hard disk." "Definition of: set-top box," PC MAGAZINE, *available at* http://www.pcmag.com/encyclopedia/term/51203/set-top-box.

[2] Verizon's proprietary "digital adapters" are described in Verizon's own documents as follows: "A Digital Adapter provides Fios TV access without the interactive features, Video On Demand, and the full Media Guide that a regular Set-Top Box provides. Digital Adapters are ideally suited to TVs that are less frequently watched (like a TV in a guest bedroom) or where space limitations are a concern." "FiOS TV Equipment Information on Activation, Features, Dimensions, and Wiring," VERIZON, *available at* https://www.verizon.com/support/residential/tv/fiostv/receivers/equipment+issues/top+questions.htm.

[3] "CableCARDS" refer to an STB-replacement technology mandated by the Federal Communications Commissions ("FCC") since approximately 1998. As explained by Verizon, "[a] CableCARD is a device that provides access to certain encrypted High Definition (HD) and Standard Definition (SD) digital programs without the need for a Set-Top Box." "CableCARDS," VERIZON, *available at* https://www.verizon.com/Support/Residential/TV/FiosTV/Other+Hardware/CableCARDs/CableCARDs.htm. CableCARDS are "modules" that are roughly "a size slightly larger than a credit card" and which are designed to work in conjunction with "Digital Cable Ready" devices, such as "smart" televisions and certain electronic receivers. *Id.*

[4] "FiOS" is the commercial name of Verizon's bundled television, telephone and Internet services.

[5] In general, "TEAs" are a class of digital adapters, physical devices, and software programs that enable consumers to access various types of audio-visual content, including viewing that content on a television. Generally speaking, TEAs fall into three broad designations: (1) "stand-alone streaming devices" (*i.e.*, a device that enables a consumer to browse and view cable content directly on televisions and other digital devices capable of projecting audio-visual content to a television, including, but not limited to, the Roku Streaming Stick, the Amazon Fire TV Stick, the Google Chromecast, TiVo, and other third-party equipment alternatives) that are connected—either physically or otherwise—to a television; (2) digital adapters, connectors, signal filters, and other pieces of equipment that may be used by themselves, or in

permit Verizon customers to enjoy FiOS on multiple televisions within the same household without the claimed "necessity" of leasing multiple pieces of proprietary equipment from Verizon.

4.      Verizon's onerous (and lucrative) rental policies not only misrepresent, conflict with, and impermissibly obscure the true accessibility of Verizon's FiOS programming, but are directly belied by Verizon's own public submissions to the U.S. Congress (including signed testimonies by Executive Vice-President & General Counsel Craig L. Silliman and Verizon Executive Director Leora Hochstein) and, upon information and belief, via various other communications, misrepresentations, and omissions made by Verizon and its agents and employees.

5.      Plaintiffs seek all available relief from Verizon's ongoing course of conduct pursuant to the New Jersey Consumer Fraud Act ("CFA"),[6] the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"),[7] and the New Jersey Declaratory Judgment Act ("DJA").[8]

## JURISDICTION AND VENUE

6.      Plaintiffs have commenced this action pursuant to this Court's jurisdiction over class actions under N.J. Court Rule 4:3-1(a)(4).

7.      The Verizon Defendants regularly and systematically conduct business within New Jersey. Furthermore, upon information and belief, Plaintiffs aver that both Verizon NJ and Verizon Online LLC have principal places of business located in New Jersey. Upon information and belief, Plaintiffs also aver that Verizon NJ is incorporated under New Jersey law. Personal jurisdiction is, therefore, properly exercised over the Verizon Defendants.

8.      This Court is a proper venue pursuant to N.J. Court Rule 4:3-2(a)(3), because Plaintiff Rachel Wulk currently resides in Camden County and her cause of action also arose there.

conjunction with a "standalone streaming device" to receive programming from a multichannel video programming distributer ("MVPD"); and (3) an application or program (i.e., software) developed by an MVPD or a third party that allows MVPD content to be accessed directly from a television (i.e., SmartTVs), or via a secondary device (i.e., a computer, cell phone, tablet, or similar apparatus) that is capable of transmitting audio-visual content to a television.

6 N.J.S.A. §§ 56:8-1, et seq.

7 N.J.S.A. §§ 56:12-14, et seq.

8 N.J.S.A. §§ 2A:16-50, et seq.

## THE PARTIES

9.     Plaintiffs Rich and Leslie Struzynski are adult citizens of New Jersey who reside at 903 Denston Road, West Deptford, NJ 08086-3831.  The Struzynskis have been Verizon FiOS customers since at least April 2010, and currently rent three (3) Verizon-supplied STBs for use in their home, and three (3) Verizon-supplied digital adapters, for a total of approximately $51.94 in monthly fees (exclusive of any additional installation, administrative, and other fees charged by Verizon in relation to these rentals).[9]

10.     Plaintiff Rachel Wulk is an adult citizen of New Jersey who resides at 270 Crestmont Terrace, Collingswood, NJ 08108-1304.  Wulk has been a Verizon FiOS customer since at least May 2015, and currently rents two (2) Verizon-supplied STBs for use in her household, for a total of approximately $21.99 in monthly fees (exclusive of any additional installation, administrative, and other fees charged by Verizon in relation to these rentals).[10]

11.     Defendant Verizon New Jersey, Inc. is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business located at 1 Verizon Way, Basking Ridge, NJ 07920.

12.     Defendant Verizon Online LLC is a limited liability corporation organized and existing under the laws of the state of Delaware, with its principal place of business located at 1 Verizon Way, Basking Ridge, NJ 07920.

13.     Upon information and belief, including investigation and inquiry conducted by and through their attorneys, Plaintiffs aver the following:[11]

---

[9] This information is confirmed by Plaintiffs Rich and Leslie Struzynski's most recent billing statement, a true and correct copy of which is attached hereto, made a part hereof, and marked Exhibit "A."

[10] This information is confirmed by Plaintiff Rachel Wulk's most recent billing statement, a true and correct copy of which is attached hereto, made a part hereof, and marked Exhibit "B."

[11] See, e.g., "Verizon FiOS TV Terms of Service," VERIZON, (April 14, 2017), at ¶ 1, available at http://www.verizon.com/about/sites/default/files/FTV-ToS-04142017-v17-2-ENGLISH.pdf, a true and correct copy of which is attached hereto, made a part hereof, and marked Exhibit "C," ("This Agreement includes . . . the specific elements of your Service or Bundled Services plan, including the pricing, duration, applicable Early Termination Fee

a.  Verizon was acting individually, jointly, and/or by and through its agents, servants, franchisees, workmen, and/or employees;

b.  Verizon is a multichannel video programming distributor ("MVPD") that provides, amongst other services, broadband television programming under the FiOS service mark for both residential and commercial customers;

c.  Verizon provides services throughout New Jersey, including Camden and Gloucester Counties;

d.  At all relevant times hereto, throughout the applicable class period(s), and continuing until today, Verizon has been the service provider for all of the aforementioned FiOS services in New Jersey; and

e.  Verizon also acts as the lessor of its own proprietary equipment, with Verizon assessing a variable rental rate that differs depending on the unit being rented, along with other administrative and installation fees imposed by Verizon.

## FACTUAL BACKGROUND

a.  **The STB Rental Market**

14.  STBs are the prevailing conduit for cable television programming in American households.[12] These proprietary devices make an external cable connection accessible to the devices

---

("ETF"), and Equipment pricing, all as described in the information made available to you when placing and confirming your order . . . ."). This agreement governs Verizon customers' receipt, use, and enjoyment of FiOS "Service," a term defined in the contract to include "without limitation, all Programming, **Equipment**, media or program guides, video recording capability, **software**, technical support, and **other features, products and services provided as part of and included with our television service . . . .**" *Id.* at ¶ 2 (emphasis added).  Furthermore, the contract makes clear that the term "Equipment" refers to "equipment provided by Verizon to you for use with the Service, including **any digital adapter, set top box**, digital video recorder, video media server, **peripheral devices**, routers, or optical network terminal provided to you by Verizon that are either rented by you or otherwise required to be returned to Verizon upon termination . . . ." *Id.*

12 *See, e.g.,* Michael J. De La Merced and David Gelles, "AT&T to Buy DirecTV for $48.5 Billion in Move to Expand Clout," THE NEW YORK TIMES, May 18, 2014, *available at* https://dealbook.nytimes.com/2014/05/18/att-to-buy-directv-for-48-5-billion.

in an MVPD customer's home.  Historically, these units served the purposes of decryption (*i.e.,* converting signals into viewable content) and navigation (*i.e.,* "tuning" or browsing content).[13]

15.     As of January 2016, approximately 53 million U.S. consumers rely upon 221 million STBs to watch their television shows.  Of these 53 million, approximately **99 percent** (or about 52.47 million U.S. citizens) rent STBs from their respective cable providers.[14]

16.     STBs serve a more deliberate and pecuniary function beyond any arguable technological role—they are a mechanism for extracting additional profits from unsuspecting consumers.  Congressional fact-finding reveals the STB rental market is worth a staggering **$19.5 billion annually,** with the average U.S. household paying $231.82 in STB rental fees *every year.* Senior U.S. legislators have termed these policies, quite directly, as "unjust and unjustifiable."[15]

17.     As part-and-parcel of this billion-dollar scheme, MVPDs have coerced consumers into renting *multiple* STBs for every television in their home, claiming the duplicates are a technological necessity to receive programming on multiple televisions in the same household (they are not).  As a result, the typical U.S. cable consumer is obliged to rent an average of 2.6 STBs. Rental fees average $7.43 per month per unit (oftentimes, much more), and persist for the entire duration of a customer's contractual relationship with their respective MVPD.[16]

---

13 *See, e.g.,* Dana A. Scherer, "CRS Insights: The Battle over Cable Boxes," FED. OF AMERICAN SCIENTISTS, November 14, 2014, *available at* https://fas.org/sgp/crs/misc/IN10180.pdf.
14 *See, e.g.,* Mark Cooper & John Bergmayer, "Re: Media Bureau Request for Comment on DSTAC Report, MB Docket No. 15-64," PUBLIC KNOWLEDGE, (January 20, 2016), at 2 n.7, *available at* https://www.publicknowledge.org/documents/pk-and-mark-cooper-set-top-box-letter-to-fcc; *see also, e.g.,* "Markey, Blumenthal Decry Lack of Choice, Competition in Pay-TV Video Box Marketplace," U.S. SEN. EDWARD MARKEY, July 30, 2015, *available at* http://www.markey.senate.gov/news/press-releases/markey-blumenthal-decry-lack-of-choice-competition-in-pay-tv-video-box-marketplace ("Congressional Fact-Finding").
15 *See, e.g.,* "Markey, Blumenthal Decry Lack of Choice, Competition in Pay-TV Video Box Marketplace," U.S. SEN. EDWARD MARKEY, July 30, 2015, *available at* http://www.markey.senate.gov/news/press-releases/markey-blumenthal-decry-lack-of-choice-competition-in-pay-tv-video-box-marketplace. (declaring consumers "deserve protection against hidden, hideously vexing fees for set-top boxes" and "competitive options in accessing technology and television—not exorbitant prices dictated by monopoly cable companies").
16 *Id.*

18.     Taken as a whole, the Consumer Federation of America concludes that MVPDs are overcharging consumers in the range of $6 billion to $14 billion *every year*.[17,18]

19.     The distressing state of the MVPD equipment rental market has produced the precise result one might expect in a free market—interlopers (and in some cases, the MVPDs themselves) have developed legitimate TEAs that obviate the requirement of renting multiple pieces of proprietary equipment from an MVPD in order to enjoy programming on multiple televisions within the same home.  Contrary to Verizon's representations, the availability of TEAs has already surpassed the paradigm envisioned by the antiquated equipment policies clung to by MVPDs—particularly Verizon.

20.     Upon information, investigation, and belief, Plaintiffs aver that the reality of MVPD viewership and the availability of TEAs is much more nuanced and differentiated than Verizon would have its customers believe.[19]  Verizon is aware of these nuances, yet deceives its customers into multiple, unnecessary rental agreements and—as a result—into overpaying[20] Verizon.

---

[17] *See, e.g.*, Mark Cooper & John Bergmayer, "Re: Media Bureau Request for Comment on DSTAC Report, MB Docket No. 15-64," PUBLIC KNOWLEDGE, (January 20, 2016), at 1-2, *available at* https://www.publicknowledge.org/documents/pk-and-mark-cooper-set-top-box-letter-to-fcc. The same analysis also indicates that STB rental fees increased by 185 percent between 1994 and 2016, which is a 300 percent deviation above the Consumer Price Index during the same time period. Meanwhile, the cost of manufacturing STBs has plummeted by 90 percent along the same chronology. Simply put, there is no justification for the current state (and cost) of prevailing STB practices beyond mere profit.

[18] Plaintiffs' and the class do not request that a different price or rental rate be set for Verizon's STBs. Nor do Plaintiffs' claims rely on any allegation that the literal price set by Verizon is, in and of itself, unlawful. Rather, Plaintiffs' claims implicate Verizon's *conduct* (*i.e.*, the misrepresentations and/or omissions of material facts leading up to, and including, the consummation of the agreements that include equipment rental obligations). Plaintiffs have recited the data above concerning the STB rental market (which speaks for itself) to place Verizon's egregious conduct, which has substantially and ascertainably harmed a Class of New Jersey citizen consumers, in the proper factual context.

[19] In fact, the FCC has *required* Verizon to directly support certain types of TEAs for nearly two decades. In 1998, the FCC adopted rules establishing "(1) manufacturers' right to build, and consumers' right to attach, any non-harmful device to an MVPD network, (2) a requirement that MVPDs provide technical interface information so manufacturers, retailers, and subscribers could determine service compatibility, (3) a requirement that MVPDs make available a separate security element that would allow an STB built by an unaffiliated manufacturer to access encrypted multichannel video programming without jeopardizing security of programming or impeding the legal rights of MVPDs to prevent theft of service, and (4) the "integration ban," which required MVPDs to replace existing encryption regimes with CableCARD technology. *See, e.g.*, "Notice of Proposed Rulemaking and Memorandum Opinion and Order," FED. COMM. COMM'N, MB Docket No. 16-42, at ¶ 6 (February 18, 2016). CableCARD technology was a forerunner of current TEAs. CableCARDs are FCC-approved devices that permit cable customers to view cable programming without an STB leased directly from the cable provider. *See, e.g.*, "Digital Cable Compatibility: CableCARD-Ready Devices," FED. COMM. COMM'N, *available at* https://www.fcc.gov/reports-research/guides/digital-cable-compatibility-cablecard-ready-devices

b.    Verizon's Deceptive and Misleading Equipment Rental Practices.

21.    Verizon is the leading MVPD throughout New Jersey—providing service to some 64 percent of New Jersey citizens (approximately 5.6 million people).[21]  Additionally, New Jersey serves as the forum state of Verizon's corporate headquarters at Basking Ridge, NJ.

22.    It cannot be reasonably disputed that Verizon requires—or at least *claims* that it is necessary for—all New Jersey citizen customers to rent a separate proprietary device from Verizon for each television used to view FiOS programming.  In a suite of customer guidance documents, Verizon states the following: "To receive digital programming, premium channels, the interactive Media Guide, or On-Demand programming, a Set-Top Box is **required**."[22]

23.    In the same collection of documents, Verizon also advises its customers that the only alternatives to STB rental are **Verizon-supplied** "digital adapters" and/or "CableCARDS."

24.    With respect to "digital adapters," Verizon offers a single model for rental named the "Motorola DCT-700." Verizon describes its functionality as follows:

> **Is the DCT-700 Digital Adapter the same as a digital converter box I can buy in a store?**
>
> A DCT-700 Digital Adapter works with your FiOS TV setup and is not the same thing as the digital converter boxes you can buy in a retail store.
>
> To use a DCT-700 Digital Adapter you must be FiOS TV customer. The adapter provides FiOS TV access without the Interactive features, Video On Demand, and

---

("A retail CableCARD-ready device is a television, set-top box, or device that connects to a personal computer that you can plug directly into your cable system to receive cable channels without having to lease a set-top box from your cable operator."). Since at least August 2011, relevant FCC regulations set forth that cable providers must: (1) allow consumers to use your own third-party, CableCARD-compatible STB without charge; (2) provide a discount for customers electing to utilize a CableCARD-compatible device; and (3) provide accurate rental cost information. *See, e.g.,* "CableCARD: Know Your Rights," FED. COMM. COMM'N, *available at* https://www.fcc.gov/media/cablecard-know-your-rights (*citing* FCC Rules 76.1205(b)(2)-(5), 76.1205(b)(5)(C), 76.1602(b)). This regulatory regime is confirmation that Verizon has egregiously misrepresented the state of its STB technology in written, and other, representations to Plaintiffs and the Class.

[20] *See, supra* at n.18.

[21] *See, e.g.,* "Verizon FiOS," BROADBANDNOW, *available at* http://broadbandnow.com/Verizon-Fios (last accessed July 11, 2017).

[22] *See, e.g.,* "Required Equipment for FiOS TV," VERIZON, available at https://www.verizon.com/support/residential/tv/fiostv/general+support/new+to+tv/questionsone/84832.htm (last accessed July 11, 2017) (*emphasis added*).

the full Media Guide that a regular Set-Top Box provides. Digital Adapters are ideally suited to TVs that are less frequently watched (like a TV in a guest bedroom) or where space limitations are a concern.

### Do I need a digital converter box?

You only need a digital converter box if you have a TV that is not:

- Connected to your FiOS TV network
- Capable of receiving an over-the-air digital signal.[23]

25. With respect to "CableCARDS," Verizon offers similar guidance to its customers:

### What digital programs can I watch with my CableCARD?

You can view all FiOS TV Standard Definition and High Definition digital channels to which you subscribe. You can also order certain Pay-Per-View events by calling 1-800-VERIZON (1-800-837-4966). Without a Set-Top Box, you do not have access to On Demand programming, the FiOS TV Interactive Media Guide, or other advanced features of the FiOS TV service.

### What programs can I watch with my DCR TV without a CableCARD or Set-Top Box?

You can watch FiOS TV Local Standard Definition (SD) and High Definition (HD) local digital channels without a Set-Top Box or CableCard plugged into the Digital Cable Ready (DCR) slot.

### What should I do if I want to receive interactive services, such as the FiOS TV Interactive Media Guide or On Demand programming?

You must request a Set-Top Box from Verizon. Call 1-800-VERIZON (1-800-837-4966) to request a Set-Top Box.

### Can I use the FiOS TV Interactive Media Guide or Parental Controls with a CableCARD?

No. Some of the advanced features of your FiOS TV service are not available using a CableCARD, such as the following:

- FiOS TV Interactive Media Guide
- On Demand
- FiOS TV Widgets
- Parental Controls

---

[23] "Is the DCT-700 Digital Adapter the same as a digital converter box I can buy in a store?" VERIZON, *available at* https://www.verizon.com/support/residential/tv/fiostv/receivers/equipment+issues/questionsone/124908.htm (last accessed July 11, 2017).

A Set-Top Box is required to access these services. If you want these advanced options, you may wish to obtain a Set-Top Box to ensure access to the full range of FiOS TV services.[24]

26.    Customers seeking additional information regarding the use of *multiple* televisions to view FiOS are directed to the following explanations of Verizon's equipment rental policies:

## Can I hook up multiple TVs with Verizon FiOS Service?

Yes.  Set-Top Boxes are **required for each television where you would like to receive digital programming** (all packages and channels beyond the FiOS TV Local Package).  You can install FiOS TV on up to seven televisions with Set-Top Boxes.  Our representatives and technicians will work with you set up the best FiOS TV network in your home.

*        *        *

## Do I need a separate Set-Top Box for every TV in my house?

**Yes.**  Customers receiving FiOS TV service will need to ensure that each TV set in the home is equipped with a **Verizon-supplied** set-top box, digital adapter, or CableCARD so that they can continue to enjoy the service on all of their sets.[25]

27.    Overall, these documents state that the **only** way Verizon customers can connect multiple televisions to their "FiOS service" is by renting an equal number of Verizon-supplied proprietary devices (*e.g.*, an STB, digital adapter, and/or CableCARD).[26]  Similarly, these documents make clear that the **only** way Verizon customers can connect to their "FiOS service" **AND** receive digital programming (which constitutes any and all content beyond "local" programming) on multiple televisions is solely by renting an equal number of Verizon supplied STBS.[27]

---

[24] "CableCARDS," VERIZON, *available at* https://www.verizon.com/Support/Residential/TV/FiosTV/Other+Hardware/CableCARDs/CableCARDs.htm (last accessed July 11, 2017).

[25] *See, e.g.*, "Additional information regarding FiOS TV equipment," VERIZON, *available at* https://www.verizon.com/support/residential/tv/fiostv/general+support/new+to+tv/questionsone/84837.htm (last accessed July 11, 2017) (emphasis added).

[26] *See, e.g.*, "FiOS TV Installation," VERIZON, *available at* https://www.verizon.com/support/residential/tv/fiostv/general+support/new+to+tv/questionsone/84834.htm (last accessed July 11, 2017) ("Your Verizon FiOS TV trained Technician(s) will [i]nstall the specified number of Set-Top Boxes."); "Additional FiOS TV Installation Information," VERIZON, *available at* https://www.verizon.com/support/residential/tv/fiostv/general+support/new+to+tv/questionsone/84836.htm (last accessed July 11, 2017) (additional fees imposed if more than three (3) televisions are connected to FiOS in one home).

[27] *Id.*

28.    Verizon's online ordering system also represents such rentals as a flat requirement:



This screenshot is from a putative order for FiOS cable service in New Jersey. Verizon represents that "[a] set-top box is required" to place the order, which refers exclusively to Verizon's proprietary STBs. Prior to selection, the customer is quoted $64.99 per month for television service.

29.    Below is the menu that appears once a customer clicks on "Add TV equipment":



Tellingly, Verizon's system automatically ties the number of STBs that a customer must lease to their number of televisions. The admonition that such rentals are required also remains.

30.     As the snapshot above shows, Verizon charges its customers a minimum of $12.00 per month for the first television, and a minimum of $10.00 per month for each additional television. While Verizon has certainly endeavored to provide "choices" regarding *which* STBs customers may elect to rent, they have deceptively clouded relevant and technologically dispositive information regarding their customers' true range of options.

31.     The rationale for Verizon's opaque behavior on this point is practically self-evident from a financial standpoint—each additional STB rented is another source of revenue:



With the addition of just three (3) STBs to the original service order—the same number of STBs currently rented by Plaintiffs Rich and Leslie Struzynski—the monthly price for FiOS television service jumps to $96.99, an increase in price of approximately **67 percent**. It is possible for FiOS customers to rent as many as seven (7) STBs from Verizon at a single address under normal circumstances (and perhaps more).[28] The prices in these screenshots are exclusive of any DVR-capability that customers elect to include with each and every STB (which costs even more *still*).[29]

32.    Furthermore, this fee assessment also does not include any of the "installation" fees that are assessed by Verizon in connection with the rental of Verizon-supplied STBs, or related administrative fees, other costs imposed by Verizon, taxes, *etc.*

---

[28] *See, e.g.,* "Additional FiOS TV Installation Information," VERIZON, *available at* https://www.verizon.com/support/residential/tv/fiostv/general+support/new+to+tv/questionsone/84836.htm (last accessed July 11, 2017) (additional fees imposed if more than three (3) televisions are connected to FiOS in one home).
[29] *See, supra* at n.15. Verizon's prices related to the rental of *multiple* STBs (rental fees, installation fees, and administrative fees) are the measurement of damages in this case, **not** the factual foundation of Plaintiff's claims.

33.    This process does not provide customers with a transparent or adequate opportunity to select how many STBs they wish to lease from Verizon, exclusive from the number of televisions they plan to use to access FiOS programming, nor does it provide customers with any information regarding analogous equipment alternatives ("TEAs").

34.    Verizon's equipment rental practices depicted above also do not adequately apprise New Jersey citizen consumers of the availability of Verizon's own alternatives to STB rental (including, but not limited to, the aforementioned "digital adapters" and "CableCARDS").[30]

35.    Upon information and belief, Plaintiffs aver that New Jersey FiOS customers that order FiOS service via alternative methods (*i.e.*, not online), receive similar (if not identical) deceptive information regarding Verizon's STB rental policies and encounter analogous roadblocks to pursuing alternative equipment arrangements from Verizon's agents and/or employees.

c.    **Binding Representations Reveal Verizon Has Thorough Knowledge of TEAs.**

36.    In stark contrast to the representations discussed above, in which Verizon is bullish regarding its ongoing statements regarding its equipment rental programs, it has made quite different statements in over two years' worth of filed statements with the FCC and the United States Congress.

37.    Some almost three years ago, in December 2014, in response to an official inquiry regarding Verizon's STB policies from the United States Senate, Verizon General Counsel Silliman stated the following in signed congressional testimony:

> [T]he traditional set-top box is rapidly becoming only one of many ways that consumers access video content from video distributers, and . . . changes in technology and competition . . . have provided consumers with additional choices in how and from whom the access video programming. **Consumers increasingly are untethering themselves from their TVs and the traditional set-top boxes,** which were long the centerpiece of the consumer television experience. **They now**

---

[30] *See also, e.g.,* "Additional information regarding FiOS TV equipment," Verizon, *available at* https://www.verizon.com/support/residential/tv/fiostv/general+support/new+to+tv/questionsone/84837.htm (last accessed July 11, 2017) (discussing "Verizon-supplied . . . digital adapters . . . .").

enjoy the freedom to view and interact with content on any device, anytime, anywhere. Advances in home networking and the growing popularity of video delivered over the Internet are fueling these rapid and constantly evolving, technology changes.

\* \* \*

Subscribers to Verizon's FiOS TV service can also access FiOS TV programming on their own equipment, including Xbox game consoles, and smart TVs, through the FiOS TV application. Also, FiOS TV customers can access well over a hundred linear channels in-home and dozens of linear channels out-of home with the FiOS Mobile software application on tablets and smartphones.

\* \* \*

a.  What percentage of your customers leases one or more set-top boxes from your company?

Answer: The vast majority of Verizon's FiOS TV subscribers lease at least one set-top box from Verizon. In addition, many consumers lease CableCARDS or access Verizon's FiOS TV service through means other than the traditional set-top box, e.g., smartTV, game console, computer, mobile device.

\* \* \*

As noted above, our customers' viewing experiences are shifting—much of FiOS TV content is now accessible over a wide range of consumer devices, including Smart TVs, BluRay players, game consoles, smartphones, and tables, through the FiOS Mobile application. For the few customers interested in owning their own set-top boxes, Verizon supports and provides CableCARDS that enable access to our FiOS TV service through such set-top boxes.

5.  If a customer chooses to purchase their own set-top box from a company different than yours, does your company require the consumer to pay any installation or support costs separate from those levied on customers who simply lease a set-top box from your company?

Answer: The initial FiOS installation costs, if any, are the same for customers who lease set-top boxes versus customers who provide their own set-top box. The current support cost for customers who provide their own set-top boxes is $4.99 a month to lease a CableCARD. A customer can self-install the CableCARD in a set-top box purchased at retail.[31]

---

[31] Craig L. Silliman, "RE: Set-Top Box Marketplace," VERIZON, December 11, 2014, at 1-4, *available at* https://www.markey.senate.gov//imo/media/doc/Response%20-%20VZ%20%2012-14.pdf (emphasis added).

38.   Exposing Attorney Silliman's statements to both "sunlight" and "electric light,"[32] a number of things become immediately evident: (a) Verizon was, and remains, fully cognizant that their own proprietary equipment is **not** the only way that their customers can receive FiOS programming in their home; (b) Verizon has full awareness of the wide range of stand-alone streaming devices that are readily available and permit Verizon customers to circumvent the alleged necessity of renting multiple pieces of Verizon's own proprietary technology; and (c) Verizon, itself, has developed hardware and software specifically designed to enable its FiOS customers to view content at their own discretion.

39.   General Counsel Silliman's statements are confirmed within the same collection of customer guidance documents discussed above, as Verizon actually specifically advises its FiOS members that they have the option of accessing such programming online at their leisure:

> As a FiOS TV subscriber, you can watch your favorite original programming, TV shows, and the latest movies online . . . . Just sign into FiOS TV Online with your Verizon user name and password and you can watch on your computer—at home or away—using any broadband connection.   You will be able to watch shows from networks that match up with channels you subscribe to based on your current FiOS TV programming package.[33]

40.   Moreover, these representations are fully confirmed by additional filings prepared by other Verizon executives and attorneys.   Below are official remarks advanced on behalf of all "Verizon companies" that are "the regulated, wholly-owned subsidiaries of Verizon Communications Inc." to the FCC in April 2016 (almost two years after Mr. Silliman's congressional testimony and 2014 statements):[34]

---

[32] Louis D. Brandeis, Other People's Money and How the Bankers Use it 92 (Frederick A. Stokes Co. Ed. 1914)(1913) ("sunlight is said to be the best of disinfectants; electric light is the most efficient policeman.")

[33] "Welcome to FiOS TV," VERIZON, *available at* https://www.verizon.com/support/residential/tv/fiostv/general+support/new+to+fios+tv/questionsone/84831.htm.

[34] The problems plaguing the STB market are pervasive enough that it has also attracted prolonged attention from the FCC, which has been wrestling with this brand seemingly baffling problem for decades.  *See, e.g.,* Jim Puzzanghera, "Is the FCC ready to think outside the set-top box?," THE LOS ANGELES TIMES, November 8, 2015, *available at* http://www.latimes.com/business/technology/la-fi-set-top-box-future-20151109-story.html.  In particular, former FCC chairman Tom Wheeler has recently likened the need for regulation in the current STB rental market to the last century's

Today's market for video services offers consumers more choices than ever before. **The trends are clear: Consumers want to get their content from the provider of their choice using the device of their choice and when and where they want it.** Competition and advances in technology are fueling these trends and will continue to disrupt the marketplace. Verizon supports efforts to promote innovation and increase consumer choice throughout the video marketplace.

*   *   *

Structured correctly, the [FCC's] proposals could hasten **the inevitable demise of traditional set-top boxes.** As [an MVPD] that leases millions of set-top boxes to our subscribers today, Verizon understands that new competition in this area will present challenges. **We recognize however that the old video viewing model is already giving way to one where consumers increasingly control how, when, and where to view content.** We understand that this emerging model promises many benefits to consumers and opportunities for innovative service providers. Verizon shares the goals of increased innovation and consumer choice . . . .

*   *   *

Consumers have more choices than ever before in how they access and view video programming, and the era of the traditional set-top box is already fading. **Today's consumers enjoy access to video content from multiple sources and platforms. . . . MVPDs and manufacturers have designed and distributed applications that enable consumers to access content with their own devices, including smartphones, tablets, games consoles, and Smart TVs, using standard operating systems such as Android, iOS, and Windows.** All major MVPDs have developed and deployed such applications, and consumers have initiated over 50 million downloads of MVPD apps to mobile devices and Smart TVs. . . . **To a large extent, the video marketplace already provides an environment in which "MVPD subscribers [can] watch what they pay for wherever they want, however they want, and whenever they want."**

*   *   *

MVPDs like Verizon continue to roll out new services and technologies that benefit their subscribers, **which they should enjoy using either MVPD-supplied or third-party navigation devices.**

---

liberation of consumers from the burden and obligation of, for example, being required to lease a rotary telephone from their service provider. *See, e.g.,* Tom Wheeler, "It's Time to Unlock the Set-Top Box Market," RECODE, January 27, 2016, *available at* http://www.recode.net/2016/1/27/11589108/its-time-to-unlock-the-set-top-box-market ("[I]f you wanted to have a landline in your home, you had to lease your phone from Ma Bell. There was little choice in telephones, and prices were high. The FCC unlocked competition and empowered consumers with a simple but powerful rule: Consumers could connect the telephones and modems of their choice to the telephone network."). General Counsel Silliman's comments above were made in response to a proposed rulemaking initiative from the FCC addressing these concerns regarding the STB marketplace. That rulemaking was postponed indefinitely in September 2016. *See, e.g.,* Cecilia Kang, "F.C.C. Delays Vote on Cable Set-Top Boxes," THE NEW YORK TIMES, September 29, 2016, *available at* https://www.nytimes.com/2016/09/30/technology/fcc-cable-box-vote-delayed.html.

17

\*       \*       \*

> The [FCC's] rules should support the ongoing evolution toward an environment in which consumers will not need to use separate navigation devices to access MVPD content.    As explained above, **consumers can already access MVPD programming through a host of consumer devices using applications, and the day is coming when traditional set-top boxes will be relegated to the technology dustbin next to rotary telephones and analog television sets.**[35]

41.    Additionally, on September 21, 2016, Verizon's Executive Director of Federal Regulatory and Legal Affairs Leora Hochstein reiterated Verizon's commitment to expanding "consumer choice" in a follow-up letter to the FCC:

> As a competitive MVPD, Verizon seeks to empower its customers to access content when and where they want it and on the devices they choose.  An apps-based approach can be an effective way to ensure that consumers have additional choices in how they view their video services.  In fact, Verizon has worked closely with content providers and device platform owners, such as iOS, Android and Amazon, to develop FiOS apps that deliver content to our subscribers in a variety of ways.[36]

42.    The unmistakable import of these representations is that Verizon is perfectly aware of the "state-of-the-art" regarding MVPD video programming, including a full understanding of how consumers are able to access FiOS content. While Verizon speaks in the "future" tense of the "inevitable demise of traditional set-top boxes," in truth, a transformative marketplace shift has already taken place in the form of TEAs.  In fact, Verizon has been explicitly attempting to position its FiOS programming to take advantage of these TEAs for years, as both Mr. Silliman and Ms. Hochstein's statements reveal. Yet, curiously, Verizon continues to represent—to its *customers*—that the rental of multiple pieces of Verizon-supplied equipment is somehow **required** at the point-of-sale, and in the litany of documents discussed above.

---

[35] William H. Johnson, Esq., "Comments of Verizon," FED. COMM. COMM'N, at 1-2, 3-7, *available at* https://ecfsapi.fcc.gov/file/60001690178.pdf (emphasis added).
[36] Leora Hochstein, "Letter RE: Expanding Consumers' Video Navigation Choices, MB Docket No. 16-42; Commercial Availability of Navigation Devices, CS Docket No. 97-80," Verizon, (September 21, 2016), *available at* https://ecfsapi.fcc.gov/file/109212950705929/STB.exparte.9.21.16.pdf.

43.    Assuming, *arguendo*, that **one** leased STB may somehow be required to facilitate transmission of FiOS service into Verizon's New Jersey customers' respective homes, hoodwinking this Class of consumers into leasing as many as seven (7) STBs (and potentially more pieces of other proprietary equipment) for each and every television in those homes is technologically duplicative, wholly unnecessary, and extraordinarily deceptive. Verizon's strategy is not unique - - attempt to skirt disaster by claiming that it supports and enables the use of TEAs before its regulators, yet represent to its own customers that there is some illusory necessity of renting multiple pieces of equipment directly from Verizon (which equipment is by Verizon's own admission outdated almost immediately upon installation).

44.    Verizon has developed a number of proprietary programs—in order to facilitate the "customer choice" it claims to support so ardently—which also provide full and direct access to FiOS programming on multiple televisions within the same residence **without** the need for multiple pieces of Verizon-supplied equipment (either as a standalone program, or used in conjunction with a standalone streaming device).[37] At various times in the last few years, Verizon has created at least two separate programs that permit such access, including the FiOS TV App,[38] and the FiOS Mobile App.[39] As of filing, at least one (1) of these programs remains available and active to FiOS customers.

---

[37] Verizon's Terms of Residential Service confirm that Verizon has made these workarounds widely available to its FiOS customers: "Verizon may enable you to access and view Programming, including On Demand Services, in a variety of ways: (i) by streaming Programming to your TV through Equipment or **Other Devices**; (ii) by downloading Programming to an authorized and compatible handset or portable device through a Verizon-provided application supporting media playback; or (iii) by streaming to your PC, using supported browser versions and Verizon-provided hyperlinks, software, or portable-wireless device." Exhibit "C" at ¶ 4(d) ("USE OF THE SERVICE").

[38] Jon Brodkin, "Verizon kills FiOS live TV apps for Xbox and smart TVs," ARS TECHNICA, March 21, 2016, *available at* https://arstechnica.com/business/2016/03/verizon-kills-fios-live-tv-apps-for-xbox-and-smart-tvs/ (last accessed July 11, 2017).

[39] *See, e.g.,* "TV that goes where you go," VERIZON, *available at* https://www.verizon.com/home/fiosmobileapps (last accessed July 11, 2017) ("With the FiOS Mobile app you can live stream on your tablet and smartphone, access a library of thousands of FiOS On Demand movies and TV Shows, plus watch your premium channel content, virtually anywhere you go. All in one convenient app."); *see also, e.g.,* "Verizon expands FiOS Mobile App to include remote DVR streaming," PR NEWSWIRE, December 14, 2015, *available at* http://www.prnewswire.com/news-releases/verizon-expands-fios-mobile-app-to-include-remote-dvr-streaming-300192185.html ("The latest innovations of the FiOS Mobile

45.    The open availability of this software developed by Verizon, itself, and its public representations regarding its technological capabilities are also in direct conflict with the many deceptive statements regarding Verizon's equipment rental program enumerated above.

### d.    Verizon's Service Agreement is Unlawful and Unenforceable.

46.    Plaintiffs aver that the content of Verizon's service agreement[40] (including, but not limited to, the terms regarding its equipment rental policies, arbitration, and waiver of class/collective actions in arbitration), Verizon's patent misrepresentations and/or omissions of material facts, the methods utilized to obtain Plaintiffs' and the Class' consent, and all other relevant considerations, indicate that the agreement is unenforceable under New Jersey.

47.    Of particular concern, Verizon has also included an extraordinarily broad arbitration agreement in the most-recent version of its relevant terms of service ("Verizon FiOS TV Terms of Service"), which includes the following passages:

YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE IS NO JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE DIFFERENT, BUT AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:

(a) The Federal Arbitration Act applies to this Agreement. Except for small claims court cases that qualify, any dispute that in any way relates to or arises out of this agreement or from any equipment, products and services you receive from us (or from any advertising for any such products or services) will be resolved by one or more neutral arbitrators before the American Arbitration Association ("AAA"). You can also bring any issues you may have to the Better Business Bureau ("BBB"), attention of federal, state, or local government agencies, and if the law allows, they can seek relief against us for you.

*        *        *

---

app are how today's consumers want to watch TV and view content. . . . These new features allow our customers to take their home FiOS TV experience with them and to enjoy it whenever and wherever they go.").

[40] *See, generally*, Exhibit "C."

(c) THIS AGREEMENT DOES NOT ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA PROCEDURES OR RULES WOULD. NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, THE ARBITRATOR SHALL NOT HAVE THE POWER TO DETERMINE THAT CLASS ARBITRATION IS PERMISSIBLE. THE ARBITRATOR ALSO SHALL NOT HAVE THE POWER TO PRESIDE OVER CLASS OR COLLECTIVE ARBITRATION, OR TO AWARD ANY FORM OF CLASSWIDE OR COLLECTIVE REMEDY. INSTEAD, THE ARBITRATOR SHALL HAVE POWER TO AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM. NO CLASS OR REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT. NO RULE WILL APPLY IF IT CONFLICTS WITH THE PROVISIONS OF THIS AGREEMENT. IN ADDITION, NOTWITHSTANDING ANY CONTRARY PROVISION IN THE AAA RULES, THE ARBITRATOR WILL BE BOUND TO APPLY LEGAL PRINCIPLES AND THE LAWS THAT GOVERN THIS AGREEMENT, AND DOES NOT HAVE THE POWER TO AWARD ANY RELIEF THAT IS NOT AUTHORIZED BY SUCH LAWS.

*    *    *

(f) An arbitration award and judgment confirming it apply only to that specific case; it cannot be used in any other case except to enforce the award itself.

(g) IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION 17(c) CANNOT BE ENFORCED, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY.

(h) IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN THROUGH ARBITRATION, YOU AND VERZION UNCONDITIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY WAY. IN THE EVENT OF LITIGATION, THIS PARAGRPAH MAY BE FILED TO SHOW A WRITTEN CONSENT TO A TRIAL BY THE COURT.[41]

48.    The substance of this arbitration agreement purports to prohibit FiOS subscribers who are also New Jersey citizens from seeking collectivized (*i.e.*, class-based) relief from Verizon,

---

[41] Exhibit "C," at ¶ 17.

either via the courts or arbitration. These terms significantly prejudice Plaintiffs' and the Class' ability to seek legal redress for the claims contained within this Class Action Complaint.

49.     Plaintiffs aver that the standardized FiOS Terms of Service were presented on a "take-it-or-leave-it" basis, and that Plaintiffs were not provided with any reasonable opportunity to negotiate the terms of the contract with Verizon. Consequently, the contract is one of adhesion.

50.     Furthermore, Verizon's disparate bargaining power (due in part, to Verizon's 6490 share of the New Jersey MVPD market), coupled with the highly technical nature of the equipment involved in the relevant agreements, Plaintiffs' lack of sophistication regarding the state of cable, broadband, and/or multimedia over coax ("MoCA") technology, Verizon's economic compulsion of the Plaintiffs, and New Jersey's public policy favoring statutory remedies for New Jersey consumers augurs that Verizon's contract of adhesion is unenforceable and unconscionable.

51.     As described above at length, Verizon also made patent deceptive statements and/or omissions of material facts in the consummation of the service agreement with the Class. Plaintiffs aver that their consent to the terms of service, including but not limited to terms regarding both equipment rentals and arbitration, was deceptively obtained.

52.     Due to Verizon's disparate bargaining power, the peculiar character of television service in New Jersey and its lack of commercial competition, Verizon's predominance in the New Jersey cable television market, Plaintiffs' relative lack of knowledge and sophistication at the time regarding the state of cable equipment and related technology, and all other relevant factors, Plaintiffs' also aver their consent was obtained through undue duress.

53.     Plaintiff also avers that the arbitration clause recited above does not subsume, encompass, or otherwise apply to the statutory causes of action brought in this case. Verizon's terms of service are utterly silent as to whether the arbitration provisions apply to, or are intended to include, statutory causes of action (*i.e.*, Plaintiffs' claims pursuant to the CFA, TCCWNA, and DJA).

54.    Furthermore, Plaintiff avers that the arbitration provisions set forth in Exhibit "C" lack clarity and consistency, and are plainly contradictory as written. A straightforward reading of the provisions regarding arbitration, class actions, available relief, and the purported waiver of jury trial leaves considerable questions regarding the scope of the relief available to Plaintiffs. As such, the arbitration provisions should be invalidated for lack of clarity and consistency in drafting.

55.    By engaging in the course of conduct set forth and described above, at length, Verizon and its agents/employees have violated New Jersey law, including (but not limited to), the CFA and the TCCWNA, in the following ways:

a.    Unconscionably, deceptively, and/or affirmatively requiring Plaintiffs and the Class of New Jersey citizens to lease a separate STB for each TV in a home under the false pretense that proprietary STBs are required to receive FiOS service on multiple TVs within the same household; and

b.    Knowingly concealing, suppressing, and/or omitting salient material facts from their communications with New Jersey consumers regarding the availability and functionality of the TEAs discussed above and the false necessity of renting multiple STBs from Verizon with the hope and/or intent that Plaintiffs and the Class would then agree to multiple, open-ended lease terms for said STBs.

c.    Subjecting Plaintiffs and the Class to a contract of adhesion (including, but not limited to, the FiOS Terms of Service) that includes terms that are considered unconscionable and, therefore, unenforceable under New Jersey law;

d.    Obtaining the contractual consent of Plaintiffs and the Class to the agreements governing their relationship with Verizon (including, but not limited to, the FiOS Terms of Service) through fraud, and/or deception;

e.  Obtaining the contractual consent of Plaintiffs and the Class to the agreements governing their relationship with Verizon (including, but not limited to, the FiOS Terms of Service) through undue duress; and/or

f.  Otherwise engaging in commercial conduct deemed unlawful in New Jersey.

56.    Plaintiffs therefore allege that the conduct of Verizon and its agents, employees, officers, directors, servants, and/or other representatives constitute violations of New Jersey law, including but not limited to the CFA and the TCCWNA, and gives rise to Verizon's liability for the claims set forth herein below.

## CLASS ACTION ALLEGATIONS

57.    Plaintiffs incorporate herein, by reference, all other paragraphs and footnotes of this Class Action Complaint as if fully set forth herein at length.

58.    Plaintiffs bring this action on behalf of themselves, and as members of the Class defined below, as a Class Action under the provisions of N.J. Court Rules, R. 4:32-1.

59.    The Class on whose behalf this action is brought is defined as follows:

All New Jersey citizens who are current or former customers of Verizon, who purchased FiOS service, and who have paid rental charges, installation fees, and any other expenditures to Verizon for the installation, maintenance, and/or use of more than one Verizon-supplied STB, digital adapter, or CableCARD at any time from July 2012 to the present.

60.    Certification of the Class defined above is expedient and proper in that:

g.  The proposed class of New Jersey citizens who purchased FiOS and paid rental fees on multiple STBs are so numerous that joinder of all members is impractical. The exact number and identities of this Class are currently unknown to Plaintiffs, however, that information is uniquely and exquisitely known to Verizon;

h.  There are questions of law and fact common to the class, including, but not limited to, whether Verizon:

    i. Unconscionably, deceptively, and affirmatively required its New Jersey FiOS customers to lease multiple STBs by claiming that such rental agreements were "required" to view FiOS content on multiple televisions;

    ii. Knowingly concealed, suppressed, or omitted material facts from communications with New Jersey FiOS customers regarding the availability and functionality of TEAs with the intent that such consumers would rely upon those omissions in agreeing to multiple, open-ended leases; and

    iii. Otherwise engaged in a commercial scheme that constitutes an ongoing unfair method of commercial competition, and illegal, deceptive conduct under New Jersey Law.

61.    Plaintiffs are members of the class and their claims, as described above, are typical of the claims of the other Class members.

62.    As representative parties, Plaintiffs will fairly and adequately protect the interests of the class under the criteria set forth at N.J. Court Rule 4:32-1(a), in particular:

    a. Plaintiffs and their attorneys will adequately represent the interests of the class;

    b. Plaintiffs do not have any conflict of interest in the maintenance of this class action; and

    c. Plaintiffs have engaged responsible Class Counsel, who have sufficient financial resources to assure that the interests of the Class will be adequately protected and will not be harmed, consistent with the New Jersey Disciplinary Rules of Professional Conduct.

63.    This Class Action provides a fair and efficient method for adjudication of the controversy under the criteria set forth at N.J. Court Rule 4:32-1(b)(1)-(3), in particular:

    a. The matter appropriately may be managed and maintained as a Class Action;

25

b. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the class and establishing incompatible standards of conduct for the party opposing the class;

c. Verizon's actions and/or inactions are generally applicable to the whole Class such that Class-wide final injunctive and/or declaratory relief is appropriate;

d. Common questions of law and fact predominate over any arguable individual issues, such that a Class Action is superior to all other available adjudicative methods, particularly with respect to the following factors:

   i. Due to the adequacy and competency of Class Counsel and Plaintiffs' representation, the members of the Class will have little interest in individually controlling the prosecution of separate actions;

   ii. There is no pending litigation already commenced addressing these issues;

   iii. This Court is the appropriate forum for litigation of the claims of the entire case, which solely implicates a Class of New Jersey citizens; and

   iv. There are no unique difficulties likely to be encountered in the management of this Class Action; and

e. In view of the complexity and expense of litigation, the separate claims of the individual members of the class, alone, would not be sufficient to justify the expense of effectively prosecuting such claims;

64.    The Class is readily definable and prosecution of this controversy as a Class Action will eliminate the possibility of repetitious litigation, while also providing redress for claims that may be too small to justify the expense of individual, complex litigation. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the Courts of New Jersey and

would likely result in inconsistent adjudications. Conversely, a single Class Action would definitively determine the rights of all Class members with the added benefit of preserving judicial economy.

65.     In this Class Action, Plaintiffs seek all appropriate and available relief from Verizon for the deceptive practices and unfair trade methods of Verizon described above.

## COUNT I: Violation of the New Jersey Consumer Fraud Act ("CFA")

66.     Plaintiffs incorporate herein, by reference, all other paragraphs and footnotes of this Class Action Complaint as if fully set forth herein at length.

67.     Plaintiffs seek relief pursuant to the CFA, which enshrines legal protections and legal recourse for private actions brought by New Jersey consumers to obtain relief and recover damages caused by deceptive commercial conduct:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended or supplemented may bring an action . . . in any court of competent jurisdiction.[42]

68.     Verizon's actions described above constitute actionable and ongoing violations of the CFA pursuant to N.J. Stat. § 56:8-2 ("Fraud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice"), which provides as follows:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, . . . in connection with the sale or advertisement of any merchandise . . ., or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice . . . .[43]

---

[42] N.J.S.A. § 56:8-19.
[43] N.J.S.A. § 56:8-2.

69.    Plaintiffs, the Class, Verizon, and Verizon's agents, employees, officers, directors, servants, and/or other representatives are all "persons" as defined by the relevant section of the CFA.[44]

70.    Verizon FiOS is "merchandise" as defined by the relevant section of the CFA, as FiOS was directly and/or indirectly offered to the public for sale.[45]

71.    Verizon's actions, misrepresentations, and deceptions described herein constitute a "sale" and/or an "advertisement"[46] as defined by the relevant section of the CFA (i.e., the sale and/or advertisement of FiOS service).[47]

72.    Verizon's unconscionable affirmative actions, misrepresentation, and/or deceptions attendant to its equipment rental program as discussed throughout this Class Action Complaint (i.e., unconscionably and deceptively claiming that serial equipment rentals are allegedly "required" to view FiOS programming on multiple televisions) constitutes plainly unlawful conduct under the CFA.

73.    Plaintiffs and the Class have suffered ascertainable financial injuries and/or damages as a result of Verizon's unconscionable affirmative actions and misrepresentations, including, but not limited to, unnecessary rental fees, installation fees, lost economic opportunities and other administrative costs imposed by Verizon.

---

[44] See, e.g., N.J.S.A. § 56:8-1(d) ("[A]ny natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee, or cestuis que trustent thereof.").
[45] See, e.g., N.J.S.A. § 56:8-1(c) ("The term 'merchandise' shall include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale.").
[46] See, e.g., N.J.S.A. § 56:8-1(a) ("[T]he attempt directly or indirectly by publication, dissemination, solicitation, [e]ndorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof . . . .").
[47] See, e.g., N.J.S.A. § 56:8-1(e) ("[A]ny sale, rental or distribution, offer for sale, rental or distribution, or attempt directly to sell, rent or distribute.").

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiffs and the Class respectfully request that this Honorable Court enter judgment against Verizon as to Count I and award Plaintiffs and the Class actual and statutory damages for each instance of Verizon's unfair and/or deceptive conduct, including, but not limited to each instance when Verizon and its agents, employees, officers, directors, servants, and/or other representatives improperly required its New Jersey customers to lease multiple pieces of proprietary equipment of Verizon. Plaintiffs and the Class respectfully request damages,[48] together with interest, statutory damages,[49] treble damages,[50] costs of litigation,[51] reasonable attorneys' fees,[52] injunctive relief, and any other supplemental relief as this Court may deem appropriate.

## COUNT II:  Violation of the New Jersey Consumer Fraud Act

74.    Plaintiffs incorporate herein, by reference, all other paragraphs and footnotes of this Class Action Complaint as if fully set forth herein at length.

75.    Plaintiffs seek relief pursuant to the CFA, which enshrines legal protections and legal recourse for private actions brought by New Jersey consumers to obtain relief and recover damages caused by deceptive commercial conduct, including omissions and failures to act:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended or supplemented may bring an action . . . in any court of competent jurisdiction.[53]

---

[48] *See, e.g.*, N.J.S.A. § 56:8-2.11 ("Any person violating the provisions of the within act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful."); N.J.S.A. § 56:8-2.12 ("The refund of moneys herein provided for may be recovered in a private action . . . .").

[49] *See, e.g.*, N.J.S.A. § 56:8-19 ("In any action under this section the court shall, in addition to any appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, . . the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.").

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] N.J.S.A. § 56:8-19.

76.    Verizon's actions described above constitute actionable and ongoing violations of the CFA pursuant to N.J. Stat. § 56:8-2 ("Fraud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice"), which provides as follows:

> The . . . omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; . . . [54]

77.    Plaintiffs, the Class, Verizon, and Verizon's agents, employees, officers, directors, servants, and/or other representatives are all "persons" as defined by the relevant section of the CFA.[55]

78.    Verizon FiOS is "merchandise"[56] as defined by the relevant section of the CFA, as it was directly and/or indirectly offered to the public for sale.

79.    Verizon's concealment, suppression, and/or omission of material facts described herein constitute a "sale"[57] and/or an "advertisement"[58] as defined by the relevant section of the CFA (i.e., the sale and/or advertisement of FiOS service).

80.    Verizon's concealment, suppression, and/or omission of material facts attendant to its equipment rental program as discussed throughout this Class Action Complaint (i.e., obscuring, obfuscating, and omitting information regarding the availability of TEAs and Verizon's own alternatives to multiple equipment rentals) constitutes plainly unlawful conduct under the CFA.

---

[54] N.J.S.A. § 56:8-2.
[55] See, e.g., N.J.S.A. § 56:8-1(d) ("[A]ny natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee, or cestuis que trustent thereof.").
[56] See, e.g., N.J.S.A. § 56:8-1(c) ("The term 'merchandise' shall include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale.").
[57] See, e.g., N.J.S.A. § 56:8-1(e) ("[A]ny sale, rental or distribution, offer for sale, rental or distribution, or attempt directly to sell, rent or distribute.").
[58] See, e.g., N.J.S.A. § 56:8-1(a) ("[T]he attempt directly or indirectly by publication, dissemination, solicitation, [e]ndorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof . . . .").

81.    At all relevant times, Verizon and its employees/agents concealed, suppressed, and/or omitted material facts regarding its equipment rental policies with the intent that the Class would rely upon Verizon's concealment, suppression, and/or omissions in agreeing to multiple proprietary equipment rental agreements with Verizon.

82.    Plaintiffs and the Class have suffered ascertainable financial injuries and/or damages as a result of Verizon's unconscionable affirmative actions and misrepresentations, including, but not limited to, lost economic opportunities, unnecessary rental fees, installation fees, and other administrative costs imposed by Verizon.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiffs and the Class respectfully request that this Honorable Court enter judgment against Verizon as to Count II and award Plaintiffs and the Class actual and statutory damages for each instance of Verizon's unfair or deceptive conduct, including, but not limited to each instance when Verizon and its agents and employees: (a) improperly required its New Jersey customers to lease multiple STBs; and/or (b) misrepresented, obfuscated, or denied the availability of TEAs.  Plaintiffs and the Class respectfully request damages,[59] together with interest, statutory damages,[60] treble damages,[61] costs of litigation,[62] reasonable attorneys' fees,[63] injunctive relief, and any other supplemental relief as this Court may deem appropriate.

## COUNT III: Violation of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act.

---

[59] *See, e.g.*, N.J.S.A. § 56:8-2.11 ("Any person violating the provisions of the within act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful."); N.J.S.A. § 56:8-2.12 ("The refund of moneys herein provided for may be recovered in a private action . . . .").

[60] *See, e.g.*, N.J.S.A. § 56:8-19 ("In any action under this section the court shall, in addition to any appropriate legal or equitable relief, award threefold the damages sustained by any person in interest.  In all actions under this section, . . the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.").

[61] *Id.*

[62] *Id.*

[63] *Id.*

83.    Plaintiffs incorporate, herein, by reference, all other paragraphs of this Class Action

~~Complaint as if fully set forth herein at length.~~

84.    TCCWNA provides as follows:

Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs.  This may be recoverable by the consumer in a civil action in a court of competent jurisdiction . . . against the seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid, who aggrieved him.  A consumer also shall have the right to petition the court to terminate a contract which violates the provisions of section 2 of this act and the court in its discretion may void the contract.[64]

85.    In relevant part, the TCCWNA prohibits an ambit of corporate behavior, which factually and legally comports with Verizon's actions in this controversy:

No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes.[65]

86.    Plaintiffs and the Class are "consumers" as defined by TCCWNA (*i.e.*, "individuals" who have bought, leased, borrowed, and/or bailed property and/or service from Verizon in the form of FiOS, which is primarily for "personal, family, or household purposes."

87.    Verizon is considered a "seller, lessor, creditor, lender, or bailee" under TCCWNA and its misrepresentations, omissions, and/or related actions attendant to the consummation of the at-issue rental agreements constitute an "offer to any consumer or prospective consumer" (*i.e.*, offers to enter into agreements with Verizon, including renting Verizon-provided STBs, *etc.*).

---

[64] N.J.S.A. § 56:12-17.
[65] N.J.S.A. § 56:12-15.

88.     Verizon's misrepresentations, omissions, and/or related actions *also* constitute acts by which Verizon has given or displayed a written consumer warranty, notice or sign regarding the terms of the at-issue rental agreements (*i.e.*, the sundry provisions appearing on Verizon's websites discussed above, and all other relevant "written" warranties, notices, or signs published, displayed, or given by Verizon to the Plaintiffs and the Class, whether directly or indirectly).

89.     Verizon's conduct has violated the clearly established rights of Plaintiffs and the Class under New Jersey state law by engaging in a pattern of commercial behavior that violates the CFA as described above in Paragraphs 61-77, which Plaintiffs hereby fully incorporate herein by reference.[66]

## CLAIM FOR RELIEF

**WHEREFORE,** Plaintiffs and the Class respectfully request that this Honorable Court enter judgment against Verizon as to Count III and award Plaintiffs and the Class actual and statutory damages for each instance of Verizon's illegal conduct, including, but not limited to each instance when Verizon and its agents and employees: (a) improperly misrepresented to its New Jersey customers that leasing multiple pieces of Verizon-supplied equipment was "required" to view FiOS on multiple televisions within the same household; and/or (b) concealed, suppressed, and /or omitted the availability of TEAs. Plaintiffs and the Class respectfully request termination of the at-issue contract(s),[67] actual damages together with interest,[68] statutory damages/civil penalties,[69] costs of litigation,[70] reasonable attorneys' fees,[71] injunctive relief, and any other supplemental relief that this Court may deem appropriate.

---

[66] *See, supra* at ¶¶ 61-77.
[67] *See, e.g.,* N.J.S.A. § 56:12-17 ("A consumer also shall have the right to petition the court to terminate a contract which violates the provisions of section 2 of this act and the court in its discretion may void the contract.").
[68] *Id.* ("Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs.").
[69] *Id.*
[70] *Id.*

<u>COUNT IV: Violation of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act.</u>

90.    Plaintiffs incorporate, herein, by reference, all other paragraphs of this Class Action Complaint as if fully set forth herein at length.

91.    TCCWNA provides as follows:

Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs. This may be recoverable by the consumer in a civil action in a court of competent jurisdiction . . . against the seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid, who aggrieved him. A consumer also shall have the right to petition the court to terminate a contract which violates the provisions of section 2 of this act and the court in its discretion may void the contract.[72]

92.    In relevant part, the TCCWNA prohibits an ambit of corporate behavior, which factually and legally comports with Verizon's actions in this controversy:

No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes.[73]

93.    Plaintiffs and the Class are "consumers" as defined by TCCWNA (*i.e.*, "individuals" who have bought, leased, borrowed, and/or bailed property and/or service from Verizon in the form of FiOS, which is primarily for "personal, family, or household purposes."

94.    Verizon is considered a "seller, lessor, creditor, lender, or bailee" under TCCWNA and its misrepresentations, omissions, and/or related actions attendant to the consummation of the

---

[71] *Id.*
[72] N.J.S.A. § 56:12-17.
[73] N.J.S.A. § 56:12-15.

34

at-issue rental agreements constitute an "offer to any consumer or prospective consumer" (*i.e.*, ~~offers to enter into agreements with Verizon, including renting Verizon-provided STBs, *etc.*).~~

95.    Verizon's misrepresentations, omissions, and/or related actions *also* constitute acts by which Verizon has given or displayed a written consumer warranty, notice or sign regarding the terms of the at-issue rental agreements (*i.e.*, the sundry provisions appearing on Verizon's websites discussed above, and all other relevant "written" warranties, notices, or signs published, displayed, or given by Verizon to Plaintiffs and the Class, whether directly or indirectly).

96.    Verizon's conduct has violated the clearly established rights of Plaintiffs and the Class under New Jersey state law by subjecting Plaintiffs and the Class to unconscionable contract terms in its FiOS service agreements(s) as defined under New Jersey law, including, but not limited to, provisions regarding Verizon's equipment rental program and provisions prohibiting Plaintiffs and the Class from pursuing collectivized arbitration.

97.    With respect to Plaintiffs' claims regarding unconscionability, Plaintiffs allege that the at-issue agreement(s) are both procedurally and substantively unconscionable.

98.    Verizon's terms of service are procedurally unconscionable—and therefore a contract of adhesion—under New Jersey law due to the Plaintiffs' lack of technical sophistication and knowledge, Verizon's lack of transparency regarding its equipment rental program, and the method of presentation of the contract as a "take-it-or-leave-it" proposition without a meaningful opportunity for negotiation.

99.    Verizon's terms of service are substantively unconscionable due to the Plaintiffs' abject lack of bargaining power compared to Verizon, the extraordinarily harsh and one-sided nature of the provisions (including, but not limited to, a prohibition on **all** class-based relief), Verizon's economic compulsion of Plaintiffs' consent (*i.e.*, Verizon's misrepresentation of the necessity of

equipment rental fees coupled with Verizon's predominance of the New Jersey cable market), and New Jersey's public policy favoring the availability of statutory causes of action for its consumers.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiffs and the Class respectfully request that this Honorable Court enter judgment against Verizon as to Count IV and award Plaintiffs and the Class actual and statutory damages for each instance of Verizon's illegal conduct, including, but not limited to each instance when Verizon and its agents and employees subjected the Class to unconscionable contractual terms. Plaintiffs and the Class respectfully request termination of the at-issue contract(s),[74] actual damages together with interest,[75] statutory damages/civil penalties,[76] costs of litigation,[77] reasonable attorneys' fees,[78] injunctive relief, and any other supplemental relief that this Court may deem appropriate.

## COUNT V: Violation of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act.

100.    Plaintiffs incorporate, herein, by reference, all other paragraphs of this Class Action Complaint as if fully set forth herein at length.

101.    TCCWNA provides as follows:

Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs. This may be recoverable by the consumer in a civil action in a court of competent jurisdiction . . . against the seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid, who aggrieved him. A consumer also shall have the right to petition the court to terminate a contract which violates the provisions of section 2 of this act and the court in its discretion may void the contract.[79]

---

[74] *See, e.g.,* N.J.S.A. § 56:12-17 ("A consumer also shall have the right to petition the court to terminate a contract which violates the provisions of section 2 of this act and the court in its discretion may void the contract.").
[75] *Id.* ("Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs.").
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] N.J.S.A. § 56:12-17.

102.    In relevant part, the TCCWNA prohibits an ambit of corporate behavior, which factually and legally comports with Verizon's actions in this controversy:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes.[80]

103.    Plaintiffs and the Class are "consumers" as defined by TCCWNA (i.e., "individuals" who have bought, leased, borrowed, and/or bailed property and/or service from Verizon in the form of FiOS, which is primarily for "personal, family, or household purposes."

104.    Verizon is considered a "seller, lessor, creditor, lender, or bailee" under TCCWNA and its misrepresentations, omissions, and/or related actions attendant to the consummation of the at-issue rental agreements constitute an "offer to any consumer or prospective consumer" (i.e., offers to enter into agreements with Verizon, including renting Verizon-provided STBs, etc.).

105.    Verizon's misrepresentations, omissions, and/or related actions also constitute acts by which Verizon has given or displayed a written consumer warranty, notice or sign regarding the terms of the at-issue rental agreements (i.e., the sundry provisions appearing on Verizon's websites discussed above, and all other relevant "written" warranties, notices, or signs published, displayed, or given by Verizon to Plaintiffs and the Class, whether directly or indirectly).

106.    Verizon's conduct has violated the clearly established rights of the Class under New Jersey state law by engaging in a pattern of fraudulent and/or deceptive commercial behavior in the presentation, "negotiation," execution, and consummation of the relevant service agreements with the Class.

---

[80] N.J.S.A. § 56:12-15.

107.    With respect to Plaintiffs' claims regarding fraud and/or deception, Plaintiffs' allege that Verizon materially misrepresented the false necessity that New Jersey consumers must rent multiple STBs (or Verizon-supplied equivalents) to enjoy FiOS programming on multiple televisions, as well as concealing, suppressing, and/or omitting the availability of alternative equipment.

108.    Verizon knew or should have known that its claims regarding its equipment rental policies were false, misleading and deceptive, as evinced by the statements of its executive employees and other communications referenced herein.[81]

109.    At all relevant times hereto, Verizon knew or should have know that its misrepresentations, omissions and/or deceptions regarding the need to rent multiple pieces of Verizon-supplied equipment would reasonably relied upon by Plaintiffs and the Class when they decided to rent Verizon supplied equipment.

110.    Plaintiffs and the Class did, in fact, rely upon those misrepresentations when they entered into multiple, open-ended lease agreements for Verizon-supplied proprietary equipment.

111.    Plaintiffs and the Class suffered ascertainable injuries as a result of Verizon's course of conduct (i.e., Verizon's imposition of rental, administrative, and other equipment-related fees).

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiffs and the Class respectfully request that this Honorable Court enter judgment against Verizon as to Count V and award Plaintiffs and the Class actual and statutory damages for each instance of Verizon's illegal conduct, including, but not limited to each instance when Verizon and its agents and employees defrauded the Class. Plaintiffs and the Class respectfully request termination of the at-issue contract(s),[82] actual damages together with interest,[83]

---

[81] *See, e.g, supra* at ¶¶ 36-45.
[82] *See, e.g.,* N.J.S.A. § 56:12-17 ("A consumer also shall have the right to petition the court to terminate a contract which violates the provisions of section 2 of this act and the court in its discretion may void the contract.").

statutory damages/civil penalties,[84] costs of litigation,[85] reasonable attorneys' fees,[86] injunctive relief, ~~and any other supplemental relief that this Court may deem appropriate.~~

## COUNT VI: Violation of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act.

112.   Plaintiffs incorporate, herein, by reference, all other paragraphs of this Class Action Complaint as if fully set forth herein at length.

113.   TCCWNA provides as follows:

> Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs. This may be recoverable by the consumer in a civil action in a court of competent jurisdiction . . . against the seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid, who aggrieved him. A consumer also shall have the right to petition the court to terminate a contract which violates the provisions of section 2 of this act and the court in its discretion may void the contract.[87]

114.   In relevant part, the TCCWNA prohibits an ambit of corporate behavior, which factually and legally comports with Verizon's actions in this controversy:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes.[88]

---

[83] *Id.* ("Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs.").

[84] *Id.*

[85] *Id.*

[86] *Id.*

[87] N.J.S.A. § 56:12-17.

[88] N.J.S.A. § 56:12-15.

115.    Plaintiffs and the Class are "consumers" as defined by TCCWNA (*i.e.*, "individuals" ~~who have bought, leased, borrowed, and/or bailed property and/or service from Verizon in the~~ form of FiOS, which is primarily for "personal, family, or household purposes."

116.    Verizon is considered a "seller, lessor, creditor, lender, or bailee" under TCCWNA and its misrepresentations, omissions, and/or related actions attendant to the consummation of the at-issue rental agreements constitute an "offer to any consumer or prospective consumer" (*i.e.*, offers to enter into agreements with Verizon, including renting Verizon-provided STBs, *etc.*).

117.    Verizon's misrepresentations, omissions, and/or related actions *also* constitute acts by which Verizon has given or displayed a written consumer warranty, notice or sign regarding the terms of the at-issue rental agreements (*i.e.*, the sundry provisions appearing on Verizon's websites discussed above, and all other relevant "written" warranties, notices, or signs published, displayed, or given by Verizon to the Class, whether directly or indirectly).

118.    Verizon's conduct has violated the clearly established rights of the Class under New Jersey state law by obtaining their consent to these service agreements by duress and/or coercion.

119.    Specifically, Plaintiffs aver that their lack of bargaining power when "negotiating" with Verizon, coupled with the unique character and lack of competition in New Jersey's cable market, Verizon's predominance in New Jersey' cable market, and the lack of meaningful alternatives for cable service, produced a coercive environment in which the at-issue contractual agreements were consummated.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiffs and the Class respectfully request that this Honorable Court enter judgment against Verizon as to Count V and award Plaintiffs and the Class actual and statutory damages for each instance of Verizon's illegal conduct, including, but not limited to each instance when Verizon and its agents and employees obtained consent of the Class via duress and coercion.

Plaintiffs and the Class respectfully request termination of the at-issue contract(s),[89] actual damages together with interest,[90] statutory damages/civil penalties,[91] costs of litigation,[92] reasonable attorneys' fees,[93] injunctive relief, and any other supplemental relief that this Court may deem appropriate.

## COUNT VII:  Declaratory Judgment.

120.    Plaintiffs incorporate herein, by reference, all other paragraphs of this Class Action Complaint as if fully set forth herein at length.

121.    As discussed and described throughout this Class Action Complaint, Verizon's course of conduct respecting its equipment rental program violates New Jersey law by: (a) violating the CFA in the manner described herein;[94] (b) violating TCCWNA in the manner described herein;[95] and/or (c) otherwise violating existing New Jersey law as pleaded herein.  As such, Verizon's actions and/or inactions require judicial intervention and relief to remedy these improper practices.

122.    Pursuant to the DJA, this Court may adjudicate these claims:

A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.[96]

123.    Plaintiffs and the Class are all "persons" as defined by the DJA.[97]

---

[89]  See, e.g., N.J.S.A. § 56:12-17 ("A consumer also shall have the right to petition the court to terminate a contract which violates the provisions of section 2 of this act and the court in its discretion may void the contract.").
[90]  Id. ("Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs.").
[91]  Id.
[92]  Id.
[93]  Id.
[94]  See, e.g., N.J.S.A. § 56:8-2; see also, supra at ¶¶ 60-68.
[95]  See, e.g., N.J.S.A. § 56:12-15; see also, supra at ¶¶ 69-75.
[96]  N.J.S.A. § 2A:16-53.
[97]  See, e.g., N.J.S.A. § 2A:16-50 ("As used in this article, "person" includes any person, partnership, joint stock company, unincorporated association or society, and municipal or other corporation of any character.").

124.    Plaintiffs and the Class are "interested" parties under the relevant service contract(s) with Verizon addressing the various STB policies forming the foundation of this cause of action, and as the intended recipients of Verizon's customer guidance documents discussed above.[98]

125.    Plaintiffs and the Class are interested, affected, and contemplated by the strictures of the CFA, as they are persons who have suffered ascertainable losses and/or pecuniary injuries as a result of Verizon's unlawful conduct and flagrant misrepresentations of material facts.[99]

126.    Declaratory relief is appropriate because, as discussed at length above: (a) there is a real, actual, and substantial controversy raised by Plaintiffs' claims against Verizon, which has a vested interest in contesting Plaintiffs' claims; (b) Plaintiffs and the Class have suffered direct, pecuniary, and ascertainable losses as a result of Verizon's conduct; (c) there is a direct causal nexus between Verizon's misrepresentations, knowing concealment, deceptive conduct and/or other illegal conduct, in that those misrepresentations, concealment and/or deceptions gave direct and immediate rise to Plaintiffs' and the Class' complained-of injuries (*i.e.*, the imposition of rental fees, installation fees, and other administrative costs of equipment rentals); (d) Plaintiffs and the Class have a direct, substantial, and present interest in the resolution of the instant controversy; and (e) this controversy is ripe for judicial determination and adjudication.

127.    Plaintiffs therefore seek a declaration that Verizon has violated—and continues to violate—New Jersey law including, but not limited to, the CFA and the TCCWNA as described above in Paragraphs 61-114.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Verizon on Count VII and issue a declaration consistent with Paragraph 125 as well as any

---

[98] *See, e.g.*, N.J.S.A. § 2A:16-53 ("A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute, . . . .").
[99] *See, e.g.*, N.J.S.A. § 2A:16-56 ("Parties interested as parties to proceedings.").

supplemental relief, including, but not limited to, injunctive relief, an accounting, and any other appropriate relief under the circumstances to remedy Verizon's violations of New Jersey law, together with interest, costs of litigation, reasonable attorneys' fees, and any other supplemental relief that this Court may deem appropriate.[100]

## JURY DEMAND

128. Plaintiffs demand trial by a jury on all of the triable issues of this Complaint, pursuant to New Jersey Court Rules 1:8(b) and 4:35-1(a).

## NOTICE PURSUANT TO RULES 1:5-1(a)

129. Plaintiffs hereby demand, pursuant to Rule 1:5-1(a), that each party herein serving pleadings, interrogatories or any other discovery requests and receiving answers thereto, serve copies of all such pleadings, interrogatories and other discovery requests and all answers thereto received from any and all parties, including any documents, papers and other materials referred to therein, upon the undersigned attorney. This notice is a continuing demand.

## CERTIFICATION PURSUANT TO RULE 4:5-1(b)(2)

130. Plaintiffs hereby certify that the dispute about which they are suing is not currently the subject of any other action against the current Defendants pending in any other court or a pending arbitration proceeding, nor is any other action contemplated at this time. Plaintiffs further certify that no other parties should be made part of this lawsuit.

## DESIGNATION OF TRIAL COUNSEL PURSUANT TO RULE 4:25-4

131. David S. Senoff, Esquire, is hereby designated as trial counsel for Plaintiffs Rich and Leslie Struzynski and Rachel Wulk.

---

[100] *See, e.g.*, N.J.S.A. § 2A:16-60 ("Further relief based on a declaratory judgment may be granted whenever necessary or proper, by application to a court having jurisdiction to grant the relief.").

ANAPOL WEISS

BY: _____
David S. Senoff, Esquire
Hillary B. Weinstein, Esquire
130 N. 18ᵀᴴ Street, Suite 1600
Philadelphia, PA 19103
DSENOFF@ANAPOLWEISS.COM
HWEINSTEIN@ANAPOLWEISS.COM
Phone: (215) 790-4550
Fax: (215) 875-7733

Dated: July 21, 2017

Exhibit "A"

**verizon**√

LESLIE STRUZYNSKI
Primary Phone:      866-848-7858
Account Number:  851-780-948-0001-01
Bill Date:  May 9, 2017

**$ Ways to Pay**
- Via the My Fios app
- Online at verizon.com/PayOnline

## Account Summary

| Previous Period | | | |
|---|---|---|---|
| Previous Balance | | 201.62 | |
| Payment Received - Thank You | | -201.62 | 4/28 |
| **Balance Forward** | | **$.00** | |
| Charges | | | |
| Fios Internet, TV & Phone Bundle | | 109.99 | 5/10 - 6/9 |
| Additional Services, Equipment & Discounts | | 65.93 | 5/10 - 6/9 |
| Fees & Other Charges | | 25.70 | |
| **Total Due by June 3** | | **$201.62** | |

To avoid a late payment charge of $5 or 1.5% of your total due, whichever is greater, full payment must be received before Jun 11, 2017.

★ **Offers & benefits**

**TV on your terms**
Record the shows you love at home and enjoy them virtually anywhere with Fios Enhanced Multi-Room DVR Service and the Fios Mobile app. Plus, you get more storage to enjoy your shows. Visit verizon.com/MoreWow to upgrade. Available in select areas, Fios Internet & Verizon router required.

**Free entertainment**
Get a 48-hour free view of premium channels. Enjoy popular original series, blockbuster movies and much more entertainment. Tune to a premium channel you don't have, press C on your remote and enjoy unlimited access for 48 hours, on the channel or On Demand.

**Great speed offer**
Increase your speed for faster browsing, streaming and downloading on all your connected devices. Upgrade to Fios 50/50 Mbps Internet for just $15 more per month. To order today, call 1.888.380.7244 or visit verizon.com/SpeedOfLight. Speeds not available in all areas. Taxes apply.

---

Send this stub with your payment.

Account Number: 851-780-948-0001-01
**Total Due: $201.62**          050917

Make check payable to Verizon

$ _____

00028786 01 AV  0.370  KN050911 0130 XX
LESLIE STRUZYNSKI
903 DENSTON RD
W DPTFRD T NJ 08086-3831

ılıllılllıllılılıllılıllllılllllılllllllılı

ılılllllılılllılılılılılllılıllıllllılllılılllllllıllll

VERIZON
PO BOX 15124
ALBANY NY 12212-5124

VS 851780948000101 0000000000 000000201624

**verizon**√

LESLIE STRUZYNSKI
Primary Phone:     856-848-7858
Account Number:  851-780-948-0001-01
Bill Date:  May 9, 2017

**New movies**

Rent or buy new releases instantly.
Access them On Demand on Fios TV &
on-the-go on the Fios Mobile app.

## Your Discounts

Internet discount extended to 7/9/17, TV
discount extended to 7/9/17,

| | Price | Your Discounts | Amount You Pay |
|---|---|---|---|
| **Bundle Discounts** | | | |
| Fios Internet 15/15 | 35.00 | -10.00 | 25.00 |
| Fios TV Extreme HD | 64.99 | -10.00 | 54.99 |
| Fios Digital Voice Unlimited | 30.00 | | 30.00 |
| **Bundle Price** | **$129.99** | **-$20.00** | **$109.99** |
| **Additional Services & Equipment Discounts** | | | |
| Fios Internet 25/25 Upgrade | | | .00 |

Complimentary

**Discounts This Month**                    **-$20.00**

Discounts have been applied to the Total Due shown on page 1.

**Moving made easy**

Set up your new service before you move.
Go to verizon.com/Move.

**?** **Frequently Asked Questions**

**How can I make a payment arrangement?**

Please visit us at verizon.com/billpay and select 'Payment Arrangement'
under 'Payment Actions'.

**What are the Taxes, Surcharges, and Fees on my bill?**

Your bill includes federal, state and local
taxes, governmental surcharges and fees
as well as Verizon surcharges and fees.
These charges vary depending on what
products and services you have and in
which state you use these products and
services. For more information go to
verizon.com/taxesandfees.

**verizon✓**

**LESLIE STRUZYNSKI**
Primary Phone:    856-848-7858
Account Number:  851-780-848-0001-01
Bill Date: May 9, 2017

**⑤ Ways to Pay**
- Via the My Fios app
  - Online at verizon.com/PayOnline

## Details of Charges

Includes discounts shown on page 2.

Your monthly price after the discounts shown on page 2 were applied.

### Fios Internet, TV & Phone Bundle

Your bundle includes Fios Internet 15/15, Fios TV Extreme HD which includes $12.99 for basic service and Fios Digital Voice Unlimited

| | | |
|---|---|---|
| **Bundle Price** | **$109.99** | 5/10 - 6/9 |

### Additional Services, Equipment & Discounts

Equipment and additional services to personalize your Fios service.

**Services**

| | |
|---|---|
| Movie Package Extreme HD | 13.99 |

**Equipment**

| | |
|---|---|
| Rent Digital Adapter 3 @ 7.99 | 23.97 |
| Rent Set-Top Box Package - 2 Room | 19.98 |
| Rent Set-Top Box | 7.99 |

**Discounts**

| | | |
|---|---|---|
| Fios Internet 25/25 Upgrade | .00 | |
| **Subtotal** | **$65.93** | 5/10 - 6/9 |

### Fees & Other Charges

Includes both Verizon fees and governmental taxes and fees. For details, visit verizon.com/taxesandfees.

**Taxes, Governmental Fees & Surcharges**

| | |
|---|---|
| NJ State Sales Tax | 5.94 |
| 911 System/Emerg Resp Fee | .90 |

**Verizon Surcharges & Fees**

| | |
|---|---|
| Federal Universal Service Fee | 3.50 |
| Video Franchise Fee | 4.73 |
| CATV Universal Access Fund | .68 |
| Regulatory Recovery Fee - Federal | .08 |
| Regional Sports Network Fee | 6.89 |
| Fios TV Broadcast Fee | 2.99 |
| FDV Administrative Charge | .99 |
| **Subtotal** | **$25.70** |

| | |
|---|---|
| **Total Due** | **$201.62** |

**verizon**✓

LESLIE STRUZYNSKI
Primary Phone:    856-848-7858
Account Number:   851-780-948-0001-01
Bill Date:  May 9, 2017

## ⓘ Important

**Second Quarter 2017 Fios TV Quarterly Notice:**
This Notice provides important information about your Fios TV service. Additional details can be found at verizon.com/Notice. Please note your service is governed by the Fios TV Terms of Service, found at verizon.com/Terms.

**Products and Services, Pricing and Programming:**
Fios TV provides a variety of programming, and several options for equipment, recording and storage, as well as digital adaptors and CableCARDS. Detailed information is available at verizon.com/FiosTV. The Fios TV rate card is available anytime on your TV by pressing the Menu button on your Fios remote control, then selecting Customer Support, My Account and Fios Rate Card.

**Service Credit Information:**
In the event of a Fios TV service outage or service interruption, you may be entitled to a service credit if you promptly report the outage to us. For details, see New Jersey Service Credit Information at verizon.com/Notice.

**Parental Controls:**
Parental Controls give you the ability to control and manage the programming that is viewable in your home. Parental Controls can be established for each Set Top Box and customized to your specific needs.

For more information about Parental Controls visit Channel 131 or press the Menu button on your Fios remote to access the "Help Menu".

**Complaint Procedures:**
If you experience a service interruption or have a question or complaint about your Fios TV service, contact us at 1.800.Verizon (1.800.837.4966) ) at any time. If your concern is unresolved, you may write to: Verizon Executive Relations, 1 Verizon Way, c/o Candace Niblett, Basking Ridge, NJ 07920. If we are unable to resolve your complaint or you are dissatisfied with the resolution, you may contact the local franchising authority, the Office of Cable Television and Telecommunications at the New Jersey Board of Public Utilities, 44 South Clinton Avenue, 3rd Floor, Suite 314, P.O. Box 350, Trenton, NJ 08625-0350, 1.800.624.0331.

NOTE: Please be aware that the information included in the Quarterly Notice or the sites referenced, including service and pricing information, is subject to change.

**Broadcast Fee**
Effective on or after 30 days from the date of this message, you will receive a Fios TV Broadcast fee of $3.49/month. If you currently have a Broadcast Fee on your bill, this will be increased to $3.49/month. This monthly fee helps cover a portion of the costs local TV stations charge Verizon for their programming and is subject to change.

**Regional Sports Network Fee**
Effective on or after 30 days from the date of this message, you will receive a Fios TV Regional Sports Network (RSN) fee of $6.39/month. If you currently have a RSN Fee on your bill, it will increase to $6.39/month. This monthly fee helps cover a portion of the costs Verizon pays to RSNs to deliver professional and collegiate sports programming in each local team's territory. Verizon offers alternative packages that do not include RSNs and are not subject to this fee.

## Customer Notices

**Your Choice to Limit Sharing and Use of Information, including Customer Proprietary Network Information, for Marketing**
Verizon requests your consent to use and share your information for marketing new services to you that are different from the services you currently purchase from us. Your information includes:

- Customer Proprietary Network Information (CPNI): This is information available to us solely by virtue of our relationship with you. It relates to the type, quantity, destination, technical configuration, location, and amount of use of the telecommunications and interconnected VoIP services you purchase from us, as well as related billing information. You have a right, and we have a duty under federal law, to protect the confidentiality of your CPNI.

- Information about Your Credit: This information includes your account history with us, your credit score, and the type of information found in consumer credit reports and credit applications.

In addition to us using your information for marketing, your information will be shared with our affiliates and agents so they can market new services to you. Verizon Wireless is part of the family of Verizon companies, which includes television, telematics, internet, video, and local and long distance services affiliates. Visit Verizon.com for more information about our affiliates and the products and services they offer.

You can make separate choices for your CPNI and information about Your Credit. Your decision will not affect the provision of any services you currently have with us.

- If you don't want us to use or share your CPNI with our affiliates and agents to market services to you that are different from the services you currently purchase from us, please let us know by calling 1.866.483.9700 any time.

- If you prefer we not share credit scores or other third-party credit information with our affiliates, or permit our affiliates to use information about Your Credit to market to you, call 1.844.366.2879 anytime. When you call please have your bill and account number available.

Unless you call us at the numbers above, we may share or use your CPNI or information about Your Credit beginning 30 days after the first time we notify you of this policy. Your choice will remain valid until you notify us that you wish to change it.

Visit verizon.com for more information about our affiliates and the products and services they offer.

**Electronic Fund Transfer (EFT)**
Paying by check authorizes us to process your check or use the check information for a one-time EFT from your bank account. Verizon may retain this information to send you electronic refunds or enable your future electronic payments to us. If you do not want Verizon to retain your bank information, call 1.888.500.5358.

**verizon✓**

**LESLIE STRUZYNSKI**
Primary Phone:    856-848-7858
Account Number:   851-780-948-0001-01
**Bill Date: May 9, 2017**

**$ Ways to Pay**
• Via the My Fios app
• Online at verizon.com/PayOnline

**Service Providers**
Verizon NJ provides regional, local calling and related features, other voice services, and Fios TV service, unless otherwise indicated. Verizon Long Distance provides long distance calling and other services identified by "VLD" in the applicable billed line item. Verizon Online provides Internet service and Fios TV equipment. Fios is a registered mark of Verizon Trademark Services LLC.

**Local Franchise Authority - Fios TV**
Board of Public Utilities, Office of Cable Television, 44 South Clinton Avenue, 9th Floor, Trenton, NJ 08625, 800 624-0331. Your FCC Community ID is: NJ0916

## Services

**Questions**
• Visit verizon.com/support
• 1.800.Verizon
• Customers with disabilities, call 1.800.974.6006 (voice or tty)

**More Ways to Pay**
• Set up auto pay: verizon.com/autopay
• Pay in person: verizon.com/paymentlocations
• Pay by phone (fee applies): 1.800.837.4966

**Closed Captioning Questions and Concerns?**
If you have a concern or complaint with closed captioning on a program, please call Verizon at 1.800.VERIZON (1.800.837.4966). Written correspondence can be sent by fax to 1.888.806.7026, by email to videoclosedcaption@verizon.com, or by mail to Verizon, PO Box 4849, Trenton, NJ 08650 Attn: Elaine Bucci, Sr. Mgr.

**Bankruptcy Information**
If you are or were in bankruptcy, this bill may include amounts for pre-bankruptcy service. You should not pay pre-bankruptcy amounts; they are for your information only. Mail bankruptcy-related correspondence to 500 Technology Drive, Suite 550, Weldon Spring, MO 63304.

Exhibit "B"

RACHEL WULK
Account Number:  554-235-717-0001-05
Bill Date:  July 4, 2017



Ways to Pay
• Via the My Fios app
• Online at verizon.com/PayOnline

## Account Summary

**Previous Period**

| | | |
|---|---|---|
| Previous Balance | 96.49 | |
| Payment Received - Thank You | -96.49 | 6/26 |
| Balance Forward | $.00 | |

**Charges**

| | | |
|---|---|---|
| Fios Internet & TV Bundle | 59.00 | 7/5 - 8/4 |
| Additional Services & Equipment | 29.99 | 7/5 - 8/4 |
| Fees & Other Charges | 7.50 | |

**Total Due by July 29**        **$96.49**

To avoid a late payment charge of $5 or 1.5% of your total due, whichever is greater, full payment must be received before Aug 6, 2017.

## ⭐ Offers & benefits

### Supercharge your TV

Get Fios Multi-Room DVR Enhanced Service for more storage and ways to enjoy your shows. Stream your DVR content on selected devices virtually anywhere with the Fios Mobile app. Visit verizon.com/MoreWow. Available in select areas. Fios Internet & Verizon router required.

### MLB EXTRA INNINGS

See up to 80 out-of-market baseball games a week with the MLB EXTRA INNINGS(SM) package. Order now and MLB.TV® is included so you can watch from any device. Order on channels 1475 - 1488. Availability varies and restrictions apply.

### Get 10,000 points

My Rewards+ just got even better. Refer a Friend who orders a qualifying Fios Triple Play bundle online & get 10,000 My Rewards+ points. Log on to verizon.com/referral, and Refer a Friend today.

---

Return only this stub with your payment. We will not review or honor other written notifications. Visit verizon.com.

---

Account Number: 554-235-717-0001-05
**Total Due: $96.49**        070417

Make check payable to Verizon

$ _____ . __

RACHEL WULK
270 CRESTMONT TERR
COLLS NJ 08108- 1304

VERIZON
PO BOX 15124
ALBANY NY 12212-5124

V5 554235717000105 0000000000 000000096495

RACHEL WOLK
Account Number:  554-235-717-0001-05
Bill Date:  July 4, 2017

### New movies

Rent or buy new releases instantly.
Access them On Demand on Fios TV &
on-the-go on the Fios Mobile app.

## Your Discounts

| | Price | Your Discounts | Amount You Pay |
|---|---|---|---|
| **Bundle Discounts** | | | |
| Fios Internet 50/50 | 60.00 | -35.00 | 25.00 |
| Fios Custom TV | 49.99 | -15.99 | 34.00 |
| **Bundle Price** | $109.99 | -$50.99 | $59.00 |
| **Additional Services & Equipment Discounts** | | | |
| Rent: HD Set-Top Box 2 | 24.00 | -4.00 | 20.00 |

Internet discount extended to 5/4/18. TV
discount extended to 5/4/18.

TV discount does not expire.

### Discounts This Month    -$54.99

Discounts have been applied to the Total Due shown on page 1.

## Verizon Fast Facts

### My Verizon

Managing your Verizon services is
easy with My Verizon. You can add
or change services, review and pay
your bill, update your email address,
create sub-accounts and more.
Register at verizon.com/
myverizon to get started.

### Moving made easy

Set up your new service before you move.
Go to verizon.com/Move.



### Frequently Asked Questions

**Why does my bill fluctuate?**
Your bill amount fluctuates when you:
• Request a change to your service
• Purchase or rent movies
• Use directory assistance
• Make calls outside of your calling plan
• Receive a promotional credit
• Lose a promotional credit
• Receive a price change

**How can I request a duplicate bill?**
Duplicate bills can be downloaded and printed at verizon.com/billview.

**What is the balance that I currently owe?**
You can review your most current balance
information online at verizon.com/billview
or you can follow the prompts at
1.800.VERIZON.

RACHEL WOLK
Account Number:  554-235-717-0001-05
Bill Date:  July 4, 2017

**$** Ways to Pay
• Via the My Fios app
• Online at verizon.com/PayOnline

# Details of Charges

Includes discounts shown on page 2.

Your monthly price after the discounts shown on page 2 were applied.

**Fios Internet & TV Bundle**

Your bundle includes Fios Internet 50/50 and Fios Custom TV with 2 Channel Packs (Lifestyle/Pop Culture) which includes $12.99 for basic service

| | | |
|---|---|---|
| Bundle Price | $59.00 | 7/5 - 8/4 |

**Additional Services & Equipment**

Equipment and additional services to personalize your Fios service.

Equipment

| | | |
|---|---|---|
| Rent: Fios Quantum Gateway Router | 9.99 | |
| Rent: HD Set-Top Box 2 | 20.00 | |
| Subtotal | $29.99 | 7/5 - 8/4 |

**Fees & Other Charges**

Includes both Verizon fees and governmental taxes and fees. For details, visit verizon.com/taxesandfees.

Taxes, Governmental Fees & Surcharges

| | |
|---|---|
| NJ State Sales Tax | 2.07 |

Verizon Surcharges & Fees

| | |
|---|---|
| Video Franchise Fee | 2.07 |
| CATV Universal Access Fund | .29 |
| Regulatory Recovery Fee - Federal | .08 |
| Fios TV Broadcast Fee | 2.99 |
| Subtotal | $7.50 |

| **Total Due** | **$96.49** |
|---|---|

RACHEL WOLK
Account Number:  554-235-717-0001-05
Bill Date:  July 4, 2017

# (i) Important

### It's Easy to Pay Your Verizon Bill with Your Fios TV Remote Control
You just need to be registered on MyVerizon.com and have a saved payment method
Follow these easy steps:
Set up a Parental/Purchase Control PIN by pressing Menu, Settings, System and Parental/Purchase Control
- Press Menu, Customer Support then My Account.
- Select Account and Payment then View Account or Make A Payment and enter your Parental Control Pin
- Select Continue to view Account Summary
- Select Continue from Account Summary, then OK again to Pay Your Bill
- Select Payment Account, Your Payment Account, then press OK to submit
- A confirmation of your payment will display once the transaction is complete

## Customer Notices

### Your Choice to Limit Sharing and Use of Information, including Customer Proprietary Network Information, for Marketing
Verizon requests your consent to use and share your information for marketing new services to you that are different from the services you currently purchase from us. Your information includes:

- Customer Proprietary Network Information (CPNI): This information available to us solely by virtue of our relationship with you. It relates to the type, quantity, destination, technical configuration, location, and amount of use of the telecommunications and interconnected VoIP services you purchase from us, as well as related billing information. You have a right, and we have a duty under federal law, to protect the confidentiality of your CPNI.

- Information about Your Credit: This information includes your account history with us, your credit score, and the type of information found in consumer credit reports and credit applications.

In addition to us using your information for marketing, your information will be shared with our affiliates and agents so they can market new services to you. Verizon Wireless is part of the family of Verizon companies, which includes television, telematics, internet, video, and local and long distance services affiliates. Visit Verizon.com for more information about our affiliates and the products and services they offer.

You can make separate choices for your CPNI and Information about Your Credit. Your decision will not affect the provision of any services you currently have with us.

- If you don't want us to use or share your CPNI with our affiliates and agents to market services to you that are different from the services you currently purchase from us, please let us know by calling 1.866.483.9700 any time.

- If you prefer we not share credit scores or other third-party credit information with our affiliates, or permit our affiliates to use information about Your Credit to market to you, call 1.844.366.2879 anytime. When you call please have your bill and account number available.

Unless you call us at the numbers above, we may share or use your CPNI or Information about Your Credit beginning 30 days after the first time we notify you of this policy. Your choice will remain valid until you notify us that you wish to change it.

Visit verizon.com for more information about our affiliates and the products and services they offer.

### Electronic Fund Transfer (EFT)
Paying by check authorizes us to process your check or use the check information for a one-time EFT from your bank account. Verizon may retain this information to send you electronic refunds or enable your future electronic payments to us. If you do not want Verizon to retain your bank information, call 1.888.500.5358.

### Service Providers
Verizon NJ provides regional, local calling and related features, other voice services, and Fios TV service, unless otherwise indicated. Verizon Long Distance provides long distance calling and other services identified by "VLD" in the applicable billed line item. Verizon Online provides Internet service and Fios TV equipment. Fios is a registered mark of Verizon Trademark Services LLC.

### Local Franchise Authority - Fios TV
Board of Public Utilities, Office of Cable Television, 44 South Clinton Avenue, 9th Floor, Trenton, NJ 08625, 800 624-0331, Your FCC Community ID is: NJ0960

## Services

### Questions
- Visit verizon.com/support
- 1.800.Verizon
- Customers with disabilities, call 1.800.974.6006 (voice or tty)

### More Ways to Pay
- Set up auto pay: verizon.com/autopay
- Pay in person: verizon.com/paymentlocations
- Pay by phone (fee applies): 1.800.837.4966

### Closed Captioning Questions and Concerns?
If you have a concern or complaint with closed captioning on a program, please call Verizon at 1.800.VERIZON (1.800.837.4966). Written correspondence can be sent by fax to 1.888.806.7026, by email to videoclosedcaption@verizon.com, or by mail to Verizon, PO Box 4849, Trenton, NJ 08650 Attn: Elaine Bucci, Sr. Mgr.

### Bankruptcy Information
If you are or were in bankruptcy, this bill may include amounts for pre-bankruptcy service. You should not pay pre-bankruptcy amounts; they are for your information only. Mail bankruptcy-related correspondence to 500 Technology Drive, Suite 550, Weldon Spring, MO 63304.

Exhibit "C"

PRINT >

**Verizon Fios TV Terms of Service**

This Agreement sets forth the terms and conditions under which you the subscriber ("you," "your" or "Subscriber") agree to use Verizon Fios TV (the "Service," including Equipment and Programming) and under which the Verizon affiliates ("Verizon," "us" or "we,") identified in Exhibit A agree to provide Fios TV to you.

PLEASE READ THESE AGREEMENT TERMS CAREFULLY AS THEY CONTAIN IMPORTANT INFORMATION REGARDING YOUR RIGHTS AND OBLIGATIONS, AND OURS.

IF YOU DO NOT AGREE TO THESE TERMS, DO NOT USE THE SERVICE AND CONTACT US IMMEDIATELY TO TERMINATE IT.

1. ACCEPTANCE OF AGREEMENT; AGREEMENT TERMS GENERALLY INCLUDED.

This Agreement starts when you accept it. By accepting this Agreement, you and any other users of Fios TV within your premises are bound by its conditions. Your acceptance of this Agreement occurs upon the earlier of: (a) your electronic or oral acceptance during the submission of your order; or (b) your use of the Service. This Agreement will end when you or we terminate this Agreement as permitted below.

This Agreement includes the terms and conditions set forth below, the specific elements of your Service or Bundled Services plan, including the pricing, duration, applicable Early Termination Fee ("ETF"), and Equipment pricing, all as described in the information made available to you when placing and confirming your order, as well as our Privacy Policy applicable to Fios TV services and the other policies and materials specifically referred to in this Agreement, all of which are incorporated into this Agreement by reference. Please retain a copy of this Agreement for your records.

2. DEFINITIONS.

The term "Service" means Verizon's Fios TV, including, without limitation, all Programming, Equipment, media or program guides, video recording capability, software, technical support, and other features, products and services provided as part of and included with our television service, including the On Demand services described in Exhibit A (the "On Demand Services"). The Service does not include voice telephony service or any Verizon internet services. The term "Equipment" means equipment provided by Verizon to you for use with the Service, including any digital adapter, set top box, digital video recorder, video media server, peripheral devices, routers, or optical network terminal provided to you by Verizon that are either rented by you or otherwise required to be returned to Verizon upon termination or cancellation of Service, along with any software contained in or downloaded to such Equipment as part of the Service. The term "Equipment" does not include any router, or other device that you purchase from Verizon or a third party (such routers and other devices are referred to herein as "Other Devices"), nor any Equipment that has been designated by us as "Retired." . "Retired" designates a device that may have originally been provided by Verizon, but is no longer subject to return to us; a list of Retired devices can be found at verizon.com/Retired. The term "Premises" refers to the physical location at which the Service has been installed. "Programming" means content provided by Verizon or its third-party licensors, providers or suppliers and provided as part of and included with the Service, including, without limitation, images, photographs, animations, video programming, information services, audio, music, and text, irrespective of the manner or format in which such content is delivered. The term "Bundled Services" means a combination or "bundle" of Verizon Fios TV with one or more eligible Verizon services, including but not limited to Verizon Fios Internet Service, Verizon Freedom Essentials or Fios Digital Voice service or Verizon ONE- BILL® service. Verizon Fios TV Equipment, and Other Devices, may be offered and priced separately from Bundled Service offers.

3. SERVICE CHANGES.

Subject to applicable law, we reserve the right to change, rearrange, add, delete or otherwise modify the Service at any time, with or without prior notice to you, including changing, rearranging or otherwise modifying our Programming packages, the selections available in those packages, the Equipment, any Other Devices, and any other features, products and services that we offer. Verizon or its suppliers may, without notice or liability, restrict the use of any Services or limit its time of availability in order to perform maintenance activities and to maintain security. Not all services may be available in all areas.

4. USE OF THE SERVICE.

(a) You agree to use the Service only for your private non- commercial use and own personal viewing enjoyment. The Programming distributed via the Service may not be viewed or otherwise displayed in areas open to the public, including, without limitation, commercial establishments, with the exception of On Demand usage or as otherwise specifically authorized by us in writing. You may not rebroadcast or transmit the Programming or charge admission for its viewing. You may not take any actions to alter or avoid any security or access controls or restrictions associated with the Service, Equipment, or Other Devices.

(b) You are responsible for all use of the Service, whether by you or someone using the Service with or without your permission. You agree not to use the Service, directly or indirectly, for any unlawful purpose, including without limitation, violation of the copyright laws through the use, production, copying, rebroadcast or redistribution of any Programming distributed as part of the Service or recorded utilizing equipment containing digital video recording devices. You further agree that your use of the Service is your sole responsibility, at your own risk, and subject to all applicable local, state, and federal laws and regulations. We, in our sole discretion, or any Programming provider, may prosecute you and other responsible parties under applicable federal, state and local laws in the event that the Service is used for an unlawful purpose. As described in more detail in Section 13 below, you agree to indemnify us in the event of any such violation by you or anyone using the Service at the Premises.

(c) You understand and agree that not all Programming may be suitable for all viewers, and users of the Service may have access to Programming that may be sexually explicit, obscene, offensive, or otherwise unsuitable or objectionable, especially for children under the age of eighteen (18). You further understand and agree that it is your responsibility to impose any viewing restrictions you determine are appropriate to limit viewing and access to potentially objectionable material, and you agree to supervise usage of the Service. YOU AGREE THAT WE ARE NOT RESPONSIBLE TO YOU OR ANYONE ELSE VIEWING PROGRAMMING OR INFORMATION PROVIDED ON, OR ACCESSED THROUGH, THE SERVICE FOR ANY CONTENT THAT YOU OR OTHERS MAY DEEM TO BE OBJECTIONABLE FOR ANY REASON AND YOU WAIVE ANY CLAIMS AGAINST US FOR ANY INJURY OR HARM RELATING TO SUCH CONTENT OR THE VIEWING OF PROGRAMMING. YOU FURTHER UNDERSTAND AND AGREE THAT WE ARE NOT RESPONSIBLE FOR THE INFORMATION OR MATERIALS ACCESSIBLE VIA THE INTERNET THROUGH USE OF THE SERVICE. IN ADDITION, YOU AGREE THAT YOU ARE SOLELY RESPONSIBLE FOR ANY PURCHASES OR OTHER TRANSACTIONS MADE THROUGH, USING, OR IN CONNECTION WITH THE SERVICE, INCLUDING ANY ON DEMAND PURCHASES.

(d) Verizon may enable you to access and view Programming, including On Demand Services, in a variety of ways: (i) by streaming Programming to your TV through Equipment or Other Devices; (ii) by downloading Programming to an authorized and compatible wireless handset or portable device through a Verizon-provided application supporting media playback; or (iii) by streaming to your PC, using supported browser versions and Verizon-provided hyperlinks, software, or portable/wireless device. The streaming and downloading technology employed by Verizon may vary among devices and software applications.

5. SOFTWARE LICENSES AND THIRD-PARTY SERVICES.

(a)   We may provide you, for a fee or at no charge, software that may be required for use in connection with the Service which is owned by us or our third-party licensors, providers and suppliers ("Software" or "Access Software"). We reserve the right periodically to update, upgrade or change the Software remotely or otherwise and to make related changes to the settings and software on your computer, the Equipment, or any Other Devices, and you agree to permit such changes and access to your computer, the Equipment, and any Other Devices. You may use the Software only in connection with the Service and for no other purpose.

(b)   Certain Software may be accompanied by an end-user license agreement ("EULA") from us or a third party. Your use of the Software is governed by the terms of that EULA and by this Agreement, where applicable. You may not install or use any Software that is accompanied by or includes a EULA unless you first agree to the terms of the EULA.

(c)   For Software not accompanied by a EULA, you are hereby granted a revocable, nonexclusive, nontransferable license by us or our third-party licensor(s) to use the Software (and any corrections, updates and upgrades thereto). You may not make any copies of the Software. You agree that the Software is confidential information of Verizon or its third-party licensors and that you will not disclose or use the Software except as expressly permitted herein. The Software contains copyrighted material, trade secrets, patents, and proprietary information owned by us or our third-party licensors. You may not de-compile, reverse engineer, disassemble, attempt to discover any source code or underlying ideas or algorithms of the Software, otherwise reduce the Software to a human readable form, modify, rent, lease, loan, use for timesharing or service bureau purposes, reproduce, sublicense or distribute copies of the Software, or otherwise transfer the Software to any third party. You may not remove or alter any trademark, trade name, copyright or other proprietary notices, legends, symbols or labels appearing on or in copies of the Software. You are not granted any title or rights of ownership in the Software. You acknowledge that this license is not a sale of intellectual property and that we or our third-party licensors continue to own all right, title and interest, including but not limited to all copyright, patent, trademark, trade secret and moral rights, to the Software and related documentation, as well as any corrections, updates and upgrades to it. The Software may be used in the United States only, and any export of the Software is strictly prohibited.

(d)   Your license to use the Software will remain in effect until terminated by Verizon or its third-party licensors, or until your Service is terminated. Upon termination of your Service, you must cease all use of and immediately delete the Software from any device not returned to us.

(e)   If you subscribe to or otherwise use any third-party services offered by Verizon, your use of such services is subject to the EULA of that third-party provider. Violation of those terms may, in our sole discretion, result in the termination of your Service.

(f)   Certain software or technical information is licensed from third parties and may be covered by one or more U.S. Patents, pending U.S. patent applications, and pending counterpart European and international patents. All rights not expressly granted in this Agreement are reserved by Verizon

## 6. AUTHORIZED USER; PREMISES; REFUSAL OF SERVICE.

(a)   You acknowledge that you are eighteen (18) years of age or older, and that you have the legal authority to enter into this Agreement. You agree to notify us immediately whenever your personal or billing information changes (including, for example, your name, address, credit card and telephone number).

(b)   You agree to allow us and our representatives the right, at reasonable times, to enter the Premises for the purpose of installing, maintaining, servicing, inspecting, upgrading and/or removing the Service (including any Equipment and, subject to and limited by any applicable limited warranty, laws, and/or policies, Other Devices).

(c)   You acknowledge and agree that you are either an owner of, or legal tenant in, your Premises, and as such have the right to allow us and our representatives to enter and make modifications to the

Premises in connection with the delivery of the Service.

(d) We reserve the right, in our sole discretion, to refuse to provide the Service to you for any reason at any time, consistent with law.

(e) You acknowledge that the Service is subject to U.S. export control laws and regulations. You represent that you are not a citizen of an embargoed country or prohibited end user under applicable U.S. export and anti-terrorism laws, regulations and lists. You will not use, export or allow a third party to use or export the Service in any manner that would violate applicable law, including but not limited to applicable export control laws and regulations. You further agree to comply with U.S. export laws concerning the transmission of technical data and other regulated materials, including the export of any provided equipment, via the Service.

## 7. PERSONAL DATA AND PRIVACY POLICY.

Verizon will treat your personally identifiable information provided to us in accordance with our current Privacy Policy applicable to Fios TV Services, which is subject to change. A copy of the Privacy Policy applicable to Fios TV Services is available at verizon.com/privacy.

## 8. CHANGES TO THIS AGREEMENT.

The current version of the terms of this Agreement shall be available on www.verizon.com/terms. From time to time, we will make revisions to this Agreement and to the policies relating to the Service, including revisions to the provisions that govern the way that you and Verizon resolve disputes. We will provide notice of such revisions through the cable system, including the Message Center located in the interactive media guide or user interface. You agree to visit the interactive media guide or user interface periodically to review any such revisions. Revisions to the terms and conditions shall be effective on the date specified in the notice. Unless we provide otherwise, you accept the revisions and agree to abide by them by continuing to use the Service after the revisions are effective.

## 9. EQUIPMENT; MAINTENANCE AND OWNERSHIP OF EQUIPMENT.

(a) We do not guarantee that the Service will work correctly if you use equipment to access the Service other than the Equipment, or Other Devices authorized by Verizon for use in connection with the Service, including but not limited to smartphones, tablets, other portable devices, gaming consoles and internet-ready equipment. We have no responsibility for the operation or support, maintenance or repair of any third-party Other Devices, Other Devices that have been designated as Retired, software or services that you choose to use in connection with the Service or with the Equipment or Other Devices provided by us. We assume no responsibility for the operation of the Service if equipment other than the Equipment or Other Devices authorized by us for use in connection with the Service are used to access the Service.

(b) You acknowledge and agree that at all times ownership of the Equipment shall remain with us and that this Agreement allows you to use Equipment only in connection with your receipt and use of the Service. We may, at our option, supply new or reconditioned Equipment or non-third party Other Devices to you. We will repair and maintain the Equipment owned by us at our expense, unless such repair or maintenance is made necessary due to misuse, abuse or intentional damage to the Equipment, in which case you will be financially responsible for the repair or replacement of the damaged Equipment. Except as set forth in the terms and conditions of any Verizon limited warranty applicable to Other Devices, we have no obligation to repair, replace, or maintain any such Other Devices. You also agree that the Equipment will not be serviced by anyone other than our employees or our designated agents or representatives. You further agree not to tamper with or otherwise harm the Equipment, and that you will not copy, modify, reverse compile or reverse engineer any Equipment or Other Devices, or software or firmware provided by Verizon in connection with the Service. Except as set forth below, upon termination of the Service, or if the occupancy or ownership of your Premises changes, you are responsible for returning the Equipment to us in an undamaged condition, subject only to reasonable wear and tear. Failure to return any Equipment owned by us within 30 days as instructed by Verizon, or returning

Equipment in a damaged condition (subject only to reasonable wear and tear), will result in the imposition of an Equipment fee that may be substantial. If the Equipment is affixed with a label which includes the following (or similar) message, "PROPERTY OF VERIZON. DO NOT REMOVE FROM PREMISES," then you must not remove the Equipment and you will not be charged an Equipment Fee as long as the Equipment is left in place in reasonable condition (subject only to reasonable wear and tear.)

(c)   In the event that any Equipment is stolen, you are required to provide us with a copy of the police report to verify that such Equipment was reported stolen. If no report is produced, then you will be held financially responsible for the stolen Equipment.

(d)   Fios TV Equipment and Other Devices are priced separately from the price of the Service or Bundled Services plan, and may not be subject to the price protection applicable to the Service or Bundled Services plan in a term agreement or promotional offer.

(e)   You may be required to pay certain Equipment-related fees, such as restocking fees and/or exchange fees.

## 10. TERMINATION OF SERVICE; TERMINATION FEES.

(a)   You or Verizon may terminate the Service at any time and for any reason by giving notice to the other in accordance with the notice provisions set forth in this agreement. Unless otherwise required by applicable law, termination will be effective on the last day of that month's billing cycle, and you are responsible for all charges incurred through the date of termination. Installation or setup fees paid at the initiation of the Service, if any, are not refundable. If a termination is a result of violation by you of the terms of this agreement, you may also be liable to pay an Early Termination Fee as set forth in Section 10(b). We may, at our sole discretion, refuse to accept your subsequent request for Service following a termination or suspension of your use of the Service. If your Service is terminated for any reason, you may be required to pay a reconnection fee or additional deposit before the Service is reactivated.

(b)   EXCEPT AS OTHERWISE SET FORTH IN THIS AGREEMENT, IF YOU HAVE CHOSEN TO SUBSCRIBE TO A BUNDLED SERVICES PLAN WITH A MINIMUM TERM COMMITMENT, IF ANY OF THE BUNDLE SERVICES ARE TERMINATED BY YOU OR BY US BEFORE COMPLETING YOUR MINIMUM TERM, THEN YOU AGREE TO PAY VERIZON THE EARLY TERMINATION FEE SET FORTH IN THE BUNDLED SERVICES PLAN YOU HAVE CHOSEN.

## 11. PRICING AND PAYMENT.

In consideration for your receipt of the Service and use of any Equipment or Other Devices, you agree to pay us as follows:

(a) Service Fees. Billing for the Service will begin automatically:
   (i)   Upon installation of the Service if the Service is installed by Verizon or (ii) on the Due Date established by Verizon (after the Equipment, and any applicable Other Devices, has been delivered) if the Service is self-installed by you. Billing will continue until the Service is terminated in accordance with Section 10 (a) of this Agreement. You will begin receiving any discount associated with a Bundled Services plan once all the Bundled Services have been installed. Regular Service and Equipment (and, if applicable, Other Devices) charges are billed each month in advance. You agree to pay us in advance, at our rates in effect at the time, through all periods until the Service is terminated in accordance with Section 10 (a) of this Agreement. Other transactional charges, such as for On Demand or Pay Per View Services, are billed after the applicable service or feature has been ordered or provided to you. You may also be required, based on your ordering and payment history, to provide pre-billing statement payment by credit card or such other payment method as we may designate for transactional services such as On Demand or Pay Per View Services. You agree to pay all applicable charges for the Service and Equipment or Other Devices by the due date set forth in your monthly invoice. Rates for the Service and other charges (excluding charges detailed in Section 11(b) – (d))

may be changed by us at any time, subject to the provision of prior notice to you as required by law. If we provide you with notice, it will be provided as set forth in Section 14 below. Rates for On Demand and Pay Per View Services may change at any time. Your billing statement may also contain certain other charges (including, without limitation, taxes and other governmental fees, as well as charges such as franchise fees, account activation and installation charges, franchise related costs, surcharges, reactivation fees, customized setup fees, late payment charges on past-due balances, returned payment fees, Early Termination Fees and other nonrecurring charges) and you agree to pay such other charges by the due date set forth in your billing statement. The waiver of any fees or charges is at our discretion. If you cancel any component of a Bundled Services plan, the monthly charges for the remaining services on your account will automatically convert to the applicable existing non-discounted monthly service rate.

(b)    Plans with Minimum Terms. If you subscribe to a Bundled Services plan with a term commitment, you agree to maintain such services for the minimum term of that plan. At the end of your term, you may be given the option to select a new Bundled Services plan. If you do not select a new Bundled Services plan, your account will automatically convert to a month-to-month plan at a monthly fee that may be higher than your current rate. If you subscribe to a new Bundled Services plan, the terms of that plan will apply.

(c)    Third-Party Charges. You acknowledge and agree that you may incur charges with third-parties that are separate and apart from the Service Fees charged by us. These may include charges resulting from accessing online services or purchasing products and services through interactive options available through the Service, and may include additional service and data charges or fees from a wireless or internet service provider (which may be a third party or a Verizon affiliate). You are solely responsible for all charges payable to third parties or Verizon affiliates, including all applicable taxes. In addition, you are solely responsible for protecting the security of credit card and other personal information provided to others in connection with such transactions.

(d)    Late Fees. If we do not receive your full and complete payment by the due date, we may charge you a late fee on the unpaid balance and may also terminate or suspend your Service. In the event we utilize a collection agency or resort to legal action to recover an unpaid balance, you agree to reimburse us for all expenses incurred to recover such unpaid balance, including reasonable attorneys' fees and costs. If you fail to pay on time and Verizon refers your account(s) to a third party for collection, a collection fee will be assessed and will be due at the time of the referral to the third party. The fee will be calculated at the maximum percentage permitted by applicable law, not to exceed 18 percent.

(e)    Customer Deposits. We may require that you provide us with a refundable deposit ("Customer Deposit") prior to or upon the activation or reactivation of the Service. We may also require an additional Customer Deposit after activation of the Service if you fail to pay any amounts when due hereunder or seek to upgrade your Service. We may apply Customer Deposits against any unpaid amounts at any time. Within ninety (90) days of termination of Service, we shall return a sum equal to the Customer Deposit, without interest unless otherwise required by law, minus any amounts due on your account including, without limitation, any amounts owed to us for unreturned or damaged Equipment.

(f)    Questions About Your Billing Statement. Subject to applicable law, if you intend to dispute a charge on your billing statement, you must contact us within 60 days of your billing date you receive the bill in question. UNDISPUTED PORTIONS OF YOUR BILLING STATEMENT MUST BE PAID BY THE DUE DATE TO AVOID A LATE FEE AND POSSIBLE SUSPENSION OR TERMINATION OF THE SERVICE.

(g)    Payments. Except as otherwise permitted under applicable law, you agree that you will pay your bill by check, credit or debit card, electronic funds transfer payments or such other payment method as we may designate. The outstanding balance is due in full each month. If any bank or other financial institution refuses to honor any payment, draft or instrument submitted for payment to your account, we may charge you a fee in accordance with applicable law. Based on your election and subject to our approval, Verizon or its agent will bill you directly, or bill your charge

card or local Verizon telephone bill (where available). IF YOU ELECT TO BE BILLED ON YOUR VERIZON PHONE BILL, BY USING THE SERVICES, YOU AGREE TO HAVE ALL SERVICE CHARGES INCLUDED ON YOUR PHONE BILL. IF YOU SUBSCRIBE TO A BUNDLED SERVICES PLAN, THEN ALL OF THE BUNDLED SERVICES MUST BE BILLED ON YOUR VERIZON PHONE BILL.

(h)   Consents Regarding Credit. We may evaluate your credit history before modifying or providing you Service. In order to establish an account with us and/or obtain or modify the Service, you hereby authorize us to obtain a report from a consumer credit agency and to exchange information with others in connection with determining your creditworthiness.

**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

(i)   Complaint Procedures. If you have any concerns regarding customer service, billing, or service quality, please contact us via the methods set forth in your monthly invoice or in the "Contact Us" section of verizon.com. When you contact us, please explain the nature and history of the problem. We will try to promptly resolve your concern. If we are unable to resolve your concern, we will notify you that we are unable to do so and explain the reason why.

(j)   Braille and Large Print Bills. For information about receiving your Verizon bills in either Braille or Large Print, call 1-800-974-6006, Monday–Friday, 8:30am–5:00pm. Additional accessibility information is available at http://www.verizon.com/about/fios-accessibility-services.

## 12. WARRANTIES AND LIMITATION OF LIABILITY.

(a)   Service Interruptions. The Service may be interrupted from time to time for a variety of reasons, and Verizon does not represent or warrant that the Service or the Equipment, or any Other Devices, will be available or perform in a manner that meets your needs. Verizon will not be liable for any inconvenience, loss, liability or damage resulting from any preemption, loss, blackout or interruption of the Service, directly or indirectly caused by or resulting from any circumstances, including, without limitation, any circumstance beyond Verizon's reasonable control, including, but not limited to, causes attributable to you or your property, inability to obtain access to the Premises, failure of a communications satellite or our network, inability to access or interruptions in accessing Programming, loss of use of poles or other utility facilities, strike, labor dispute, riot or insurrection, war, explosion, act of terrorism, malicious mischief, fire, flood or other acts of God, failure or reduction of power, or any court order, law, act or order of government restricting or prohibiting the operation or delivery of the Service.

(b) YOU ACKNOWLEDGE AND AGREE THAT THE SERVICE SUPPLIED HEREUNDER IS PROVIDED ON AN "AS IS" OR "AS AVAILABLE" BASIS, WITH ALL FAULTS. EXCEPT AS OTHERWISE SPECIFICALLY SET FORTH IN THIS AGREEMENT AND AS OTHERWISE SPECIFICALLY SET FORTH IN ANY MANUFACTURER WARRANTY FOR ANY EQUIPMENT OR OTHER DEVICES PROVIDED BY VERIZON (BUT ONLY IF SUCH WARRANTY IS INCLUDED WITH SUCH EQUIPMENT OR OTHER DEVICES), VERIZON (AND ITS OFFICERS, EMPLOYEES, PARENT, SUBSIDIARIES, AND AFFILIATES), (COLLECTIVELY THE "VERIZON PARTIES"), ITS THIRD-PARTY LICENSORS, PROVIDERS AND SUPPLIERS, DISCLAIM ANY AND ALL WARRANTIES AND CONDITIONS FOR THE SERVICE, WHETHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ACCURACY, NON-INFRINGEMENT, NON-INTERFERENCE, TITLE, COMPATIBILITY OF COMPUTER SYSTEMS, COMPATIBILITY OF SOFTWARE PROGRAMS, INTEGRATION, AND THOSE ARISING FROM COURSE OF DEALING, COURSE OF TRADE, OR ARISING UNDER STATUTE. ALSO, THERE IS NO WARRANTY OF WORKMANLIKE EFFORT OR LACK OF NEGLIGENCE. NO ADVICE OR INFORMATION GIVEN BY VERIZON OR ITS REPRESENTATIVES SHALL CREATE A WARRANTY WITH RESPECT TO ADVICE PROVIDED.

(c) VERIZON DOES NOT WARRANT OR GUARANTEE THAT SERVICE CAN BE PROVISIONED TO YOUR LOCATION OR THAT PROVISIONING WILL OCCUR ACCORDING TO A SPECIFIED SCHEDULE, EVEN IF VERIZON HAS ACCEPTED YOUR ORDER FOR SERVICE. THE PROVISIONING OF SERVICE IS SUBJECT TO NETWORK AVAILABILITY AND THE CONDITION OF WIRING INSIDE YOUR LOCATION, AMONG OTHER FACTORS. IN THE EVENT YOUR LINE IS NOT PROVISIONED FOR ANY REASON, NEITHER YOU NOR VERIZON SHALL HAVE ANY DUTIES OR OBLIGATIONS UNDER THIS AGREEMENT (OTHER THAN YOUR OBLIGATION TO RETURN ANY EQUIPMENT).

(d) IN NO EVENT SHALL THE VERIZON PARTIES OR VERIZON'S THIRD-PARTY LICENSORS, PROVIDERS OR SUPPLIERS BE LIABLE FOR: (A) ANY DIRECT, INDIRECT, PUNITIVE, SPECIAL, CONSEQUENTIAL OR INCIDENTAL DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST PROFITS OR LOSS OF REVENUE, LOSS OF PROGRAMS OR INFORMATION OR DAMAGE TO DATA ARISING OUT OF THE USE, PARTIAL USE OR INABILITY TO USE THE SERVICE, OR RELIANCE ON OR PERFORMANCE OF THE SERVICE, REGARDLESS OF THE TYPE OF CLAIM OR THE NATURE OF THE CAUSE OF ACTION, INCLUDING WITHOUT LIMITATION, THOSE ARISING UNDER CONTRACT, TORT, NEGLIGENCE OR STRICT LIABILITY, EVEN IF VERIZON HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH CLAIM OR DAMAGES, OR (B) ANY CLAIMS AGAINST YOU BY ANY OTHER PARTY.

(e) THE LIABILITY OF THE VERIZON PARTIES, OR (SUBJECT TO ANY DIFFERENT LIMITATIONS OF LIABILITY IN THIRD-PARTY END-USER LICENSE OR OTHER AGREEMENTS) OUR THIRD-PARTY LICENSORS, PROVIDERS OR SUPPLIERS, FOR ALL CATEGORIES OF DAMAGES SHALL NOT EXCEED A PRO RATA CREDIT FOR THE MONTHLY FEES (EXCLUDING ALL NONRECURRING CHARGES, REGULATORY FEES, SURCHARGES, FEES AND TAXES) YOU HAVE PAID TO VERIZON FOR THE SERVICE DURING THE SIX (6) MONTH PERIOD PRIOR TO WHEN SUCH CLAIM AROSE, WHICH SHALL BE YOUR SOLE AND EXCLUSIVE REMEDY REGARDLESS OF THE TYPE OF CLAIM OR NATURE OF THE CAUSE OF ACTION. THE FOREGOING LIMITATIONS SHALL APPLY TO THE FULL EXTENT PERMITTED BY LAW, AND ARE NOT INTENDED TO ASSERT ANY LIMITATIONS OR DEFENSES WHICH ARE PROHIBITED BY LAW.

(f) ALL LIMITATIONS AND DISCLAIMERS STATED IN THIS SECTION 12 ALSO APPLY TO VERIZON'S THIRD- PARTY LICENSORS, PROVIDERS AND SUPPLIERS, AS THIRD-PARTY BENEFICIARIES OF THIS AGREEMENT.

(g) THE REMEDIES EXPRESSLY SET FORTH IN THIS AGREEMENT ARE YOUR SOLE AND EXCLUSIVE REMEDIES. YOU MAY HAVE ADDITIONAL RIGHTS UNDER CERTAIN LAWS (SUCH AS CONSUMER LAWS), WHICH DO NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES, OR THE EXCLUSION OR LIMITATION OF CERTAIN DAMAGES. IF THESE LAWS APPLY, OUR EXCLUSIONS OR LIMITATIONS MAY NOT APPLY TO YOU.

## 13. INDEMNIFICATION.

You agree to defend, indemnify and hold harmless the Verizon Parties from and against all liabilities, costs and expenses, including reasonable attorneys' and experts' fees, related to or arising from your use of the Service, the Equipment, and any Other Devices used in connection with the Service (or the use of your Service or any such Equipment or Other Devices by anyone else), (i) in violation of applicable laws, regulations or this Agreement including, without limitation, infringement of copyrights or other proprietary rights; or (ii) in any manner that harms any person or results in the personal injury or death of any person or in damage to or loss of any tangible or intangible (including data) property.

## 14. NOTICES.

If either of us intends to seek arbitration under this Agreement, the party seeking arbitration must first notify the other party of the dispute in writing at least 30 days in advance of initiating the arbitration. Notice to Verizon of either arbitration or mediation should be sent to NoticeOfDispute@verizon.com or to Verizon Dispute Resolution Manager, One Verizon Way, VC54N090, Basking Ridge, NJ 07920. A copy of the Notice of Dispute form can also be found at www.verizon.com/terms/disputes. The notice must describe the nature of the claim and the relief being sought, in the manner directed in the applicable arbitration or mediation Section of this Agreement. Other notices required under this Agreement shall be provided by you by contacting us via the methods set forth in your monthly invoice or in the Contact Us section of verizon.com. Our notices to you shall be deemed given: (a) when sent by e-mail to your last-known e-mail address according to our records; (b) when delivered over the cable system; (c) when deposited in the United States mail addressed to you at your last-known address; (d) when hand-delivered to your Premises, as applicable or (e) when included in our billing statements to you, regardless of whether billing statements are mailed to you or you have elected a paperless billing option.

## 15. GENERAL PROVISIONS.

(a) Survival. All obligations of the parties under this Agreement, which, by their nature, would continue beyond the termination of the Agreement, including, without limitation, those relating to Limitation of Liability and Indemnification, shall survive such termination.

(b) Assignment. You agree not to assign or otherwise transfer this Agreement, or your rights and obligations under it, in whole or in part, to any other person. Any attempt to do so shall be void. Furthermore, you agree to notify us of any changes of ownership of, or occupancy in, the Premises immediately upon such transfer of ownership or change in occupancy. We may freely assign all or any part of this Agreement with or without notice to you and you agree to make all subsequent payments as directed.

(c) Applicable Law. Except as otherwise required by law, you and Verizon agree that the Federal Arbitration Act and the substantive laws of the state and local area in which your Premises is located (the "Service Jurisdiction"), without reference to its principles of conflicts of laws, will be applied to govern, construe and enforce all of the rights and duties of the parties arising from or related in any

way to the subject matter of this Agreement. UNLESS YOU AND VERIZON AGREE OTHERWISE, YOU AND VERIZON CONSENT TO THE EXCLUSIVE PERSONAL JURISDICTION OF AND VENUE IN ARBITRATION OR SMALL CLAIMS COURT LOCATED IN THE SERVICE JURISDICTION FOR ANY SUITS OR CAUSES OF ACTION CONNECTED IN ANY WAY, DIRECTLY OR INDIRECTLY, TO THE SUBJECT MATTER OF THIS AGREEMENT. Except as otherwise required by law, including the Service Jurisdiction laws relating to consumer transactions, any cause of action or claim you may have with respect to the Service must be commenced within one (1) year after the claim or cause of action arises or such claim or cause of action is forever waived.

(d)   Waiver. Verizon's failure at any time to insist upon strict compliance with any of the provisions of this Agreement shall not be construed to be a waiver of such terms in the future. If any provision of this Agreement is determined to be invalid, illegal or unenforceable, the remaining provisions of this Agreement shall remain in full force and effect and the unenforceable portion shall be construed as nearly as possible to reflect the original intentions of the parties.

(e)   Entire Agreement. This Agreement, including any policies or materials that are incorporated herein by reference, constitutes the entire agreement between you and Verizon with respect to the subject matter hereto and supersedes any and all prior or contemporaneous agreements whether written or oral. No changes by you to this Agreement shall be effective unless agreed to in writing, signed by an authorized person at Verizon.

## 16. VOLUNTARY MEDIATION.

Verizon offers customers the option of participating in a free internal mediation program. This program is entirely voluntary and does not affect either party's rights in any other aspect of the dispute resolution procedures outlined in Section 17. In our voluntary mediation program, we will assign an employee who is not directly involved in the dispute to help both sides reach an agreement. That person has all the rights and protections of a mediator and the process has all of the protections associated with mediation. For example, nothing said in the mediation can be used later in an arbitration or lawsuit. If you would like to know more, or you would like to start the mediation process, please contact us at NoticeOfDispute@verizon.com or through Verizon Dispute Resolution Manager, One Verizon Way, VC54N090, Basking Ridge, NJ 07920, for a Notice of Customer Dispute Form. A copy of the Notice of Dispute form can also be found at www.verizon.com/terms/disputes. Fill out and send the Notice of Dispute Form to us according to the directions on the form.

## 17. ARBITRATION OR SMALL CLAIMS ACTIONS.

We hope to make you a happy customer, but if there's an issue that needs to be resolved, this Section outlines what's expected of both of us. YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE IS NO JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE DIFFERENT, BUT AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:

(a)   The Federal Arbitration Act applies to this Agreement. Except for small claims court cases that qualify, any dispute that in any way relates to or arises out of this agreement or from any equipment, products and services you receive from us (or from any advertising for any such products or services) will be resolved by one or more neutral arbitrators before the American Arbitration Association ("AAA"). You can also bring any issues you may have to the Better Business Bureau ("BBB"), attention of federal, state, or local government agencies, and if the law allows, they can seek relief against us for you.

(b)   UNLESS YOU AND VERIZON AGREE OTHERWISE, THE ARBITRATION WILL TAKE

PLACE IN THE COUNTY OF YOUR SERVICE JURISDICTION. For claims over $10,000, the AAA's arbitration rules will apply; in such cases, the loser can ask for a panel of three new arbitrators to review the award. For claims of $10,000 or less, the party bringing the claim can choose either the AAA's rules or, alternatively, can bring an individual action in small claims court. You can get procedures, rules and fee information from the AAA (www.adr.org) or from us. For claims of $10,000 or less, you can choose whether you would like the arbitration carried out based only on documents submitted to the arbitrator, or by a hearing in–person or by phone.

(c) THIS AGREEMENT DOES NOT ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA PROCEDURES OR RULES WOULD. NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, THE ARBITRATOR SHALL NOT HAVE THE POWER TO DETERMINE THAT CLASS ARBITRATION IS PERMISSIBLE. THE ARBITRATOR ALSO SHALL NOT HAVE THE POWER TO PRESIDE OVER CLASS OR COLLECTIVE ARBITRATION, OR TO AWARD ANY FORM OF CLASSWIDE OR COLLECTIVE REMEDY. INSTEAD, THE ARBITRATOR SHALL HAVE POWER TO AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM. NO CLASS OR REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT. NO RULE WILL APPLY IF IT CONFLICTS WITH THE PROVISIONS OF THIS AGREEMENT. IN ADDITION, NOTWITHSTANDING ANY CONTRARY PROVISION IN THE AAA RULES, THE ARBITRATOR WILL BE BOUND TO APPLY LEGAL PRINCIPLES AND THE LAWS THAT GOVERN THIS AGREEMENT, AND DOES NOT HAVE THE POWER TO AWARD ANY RELIEF THAT IS NOT AUTHORIZED BY SUCH LAWS.

(d) IF EITHER OF US INTENDS TO SEEK ARBITRATION UNDER THIS AGREEMENT, THE PARTY SEEKING ARBITRATION MUST FIRST NOTIFY THE OTHER PARTY OF THE DISPUTE IN WRITING AT LEAST 30 DAYS IN ADVANCE OF INITIATING THE ARBITRATION. Notice to Verizon should be sent to NoticeOfDispute@verizon.com or to Verizon Dispute Resolution Manager, One Verizon Way, VC54N090, Basking Ridge, NJ 07920. The notice must describe the nature of the claim and the relief being sought. If we are unable to resolve our dispute within 30 days, either party may then proceed to file a claim for arbitration. Verizon will pay any filing fee that the AAA charges you for arbitration of the dispute. If you provide us with signed written notice that you cannot pay the filing fee, Verizon will pay the fee directly to the AAA. If that arbitration proceeds, we'll also pay any administrative and arbitrator fees charged later, as well as for any appeal to a panel of three new arbitrators (if the arbitration award is appealable under this agreement).

(e) We may, but are not obligated to, make a written settlement offer any time before the arbitration evidentiary hearing begins (or, if there is no evidentiary hearing, before the parties complete submission of their evidence to the arbitrator). The amount or terms of any settlement offer may not be disclosed to the arbitrator until after the arbitrator issues an award on the claim. If you do not accept the offer and the arbitrator awards you an amount of money that is more than our offer but less than $5000, or if we do not make you an offer and the arbitrator awards you any amount of money but less than $5000, then we agree to pay you $5000 instead of the amount awarded. In that case we also agree to pay any reasonable attorneys' fees and expenses, regardless of whether the law requires it for your case. If the arbitrator awards you more than $5000, then we will pay you the amount awarded.

(f) An arbitration award and any judgment confirming it apply only to that specific case; it cannot be used in any other case except to enforce the award itself.

(g) IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION 17(c) CANNOT BE ENFORCED, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY.

(h) IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN THROUGH

ARBITRATION, YOU AND VERIZON AGREE THAT THERE WILL NOT BE A JURY TRIAL. YOU AND VERIZON UNCONDITIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY WAY. IN THE EVENT OF LITIGATION, THIS PARAGRAPH MAY BE FILED TO SHOW A WRITTEN CONSENT TO A TRIAL BY THE COURT.

**Exhibit A**

| Location | VERIZON AFFILIATE PROVIDING VIDEO SERVICE | VERIZON INTERNET SERVICE AFFILIATE PROVIDING EQUIPMENT |
|---|---|---|
| Delaware | Verizon Delaware LLC | Verizon Online LLC |
| Maryland | Verizon Maryland Inc. | Verizon Online - Maryland LLC |
| Massachusetts | Verizon New England Inc. | Verizon Online LLC |
| New Jersey | Verizon New Jersey Inc. | Verizon Online LLC |
| New York | Verizon New York Inc. | Verizon Online LLC |
| Pennsylvania | Verizon Pennsylvania LLC | Verizon Online Pennsylvania Partnership |
| Rhode Island | Verizon New England Inc. | Verizon Online LLC |
| Virginia (with exception) | Verizon Virginia Inc. | Verizon Online LLC |
| Dumfries, Chesapeake, City of Manassas, City of Manassas Park, Occoquan, Stafford Connecticut, Quantico and Prince Williams County, VA | Verizon South Inc. | Verizon Online LLC |

EXHIBIT B
ON DEMAND SERVICES

Verizon On Demand Services provide a multi-screen viewing function for certain Fios TV content, and is included as part of your Fios TV Services.

Your use of On Demand Services is conditional upon your continued adherence to the Verizon Online Terms of Service and the Fios TV Terms of Service, located at https://www.verizon.com/terms and of Verizon's Acceptable Use Policy, which is included in Exhibit B. In the event of any conflict between these Verizon Fios TV Terms of Service and the Verizon Online Terms of Service, the Verizon Fios TV Terms of Service will control solely to the extent of such conflict.

1. Definitions.

   "Content" shall mean video, audio, image or other files or data in digital or electronic form of any type provided through the Service.

   "On Demand Library Content" means the collection of rented or unlimited/purchased On Demand Content, as defined below.

2. User Account. You must establish and/or maintain a "My Verizon" account at http://verizon.com/myverizon and enable such My Verizon account to license On Demand Content (on a rental or unlimited basis). Your "My Verizon" account will then become an "On Demand Enabled Account."

3. Authorized Devices. In order to access the On Demand Library Content, you will need a compatible viewing device, such as a PC or a portable/handset device, that (i) meets the minimum technical requirements that Verizon may establish from time to time, (ii) supports the digital rights management system, if any, required for access to the On Demand Library Content, and (iii) has been registered with your On Demand Enabled Account (each, a "On Demand Authorized Device"). You can register up to five (5) On Demand Authorized Devices per On Demand Enabled Account, and if you subscribe to Fios TV, all of your set-top boxes within a single household will count as one of your allotted On Demand Authorized Devices. In order to register and de-register portable On Demand Authorized Devices, you need to register the device through a Verizon-provided application. You are only permitted to de-register two (2) On Demand Authorized Devices per On Demand Account per calendar year without connecting through your PC and you are only permitted to de-register and re-register the same On Demand Authorized Device two (2) times within a calendar year.

4. On Demand Service Description & Conditions of Use

   4.1 On Demand Service allows you to access and view On Demand Content in a variety of ways:

      a. by streaming On Demand Content to your TV through a Verizon-supplied Fios TV set-top box;

      b. by downloading On Demand View Content to an authorized wireless handset or portable device, or other customer equipment supporting media playback, using Verizon-provided applications. Verizon may enable you to stream On Demand Content to your device.

   4.2. On Demand Service Requirements. Internet access is required to use the Services. You are solely responsible for compliance with any minimum system requirements, and for obtaining, installing, configuring, and maintaining suitable equipment and software, including any necessary system or software upgrades, patches or other fixes, which are or may become necessary to access the Services. Certain downloaded content may be viewed offline. Not all On Demand Content is available for download. Fast-forward, rewind, 3-Day Rewind for viewing programming that has aired in the previous three days, and other viewing capabilities may vary. The availability of standard definition, high definition, and ultra-high definition video programming may also vary.

You acknowledge that delivery of Content is dependent on variables not under Verizon's control, including, but not limited to, the speed and availability of your broadband or network connection. You may experience delays or technical difficulties caused by or related to such variables, as well as the technical limitations of the On Demand Authorized Device on which you view the On Demand Library Content. To the extent permitted by applicable law, you will not receive a refund or credit for any Content that you are not able to view or have difficulty viewing due to such variables. You bear all responsibility for ensuring that you have the viewing capabilities to view Content in the appropriate format or at all.

4.3. The On Demand Service is intended solely for your non- transferable, non-commercial, private and personal use, and any other use or attempted use for commercial or other purposes is strictly prohibited. You understand and agree that advertisements, as well as certain communications from Verizon such as service announcements and administrative messages, are part of the Services and are necessary for Verizon to provide the Services. Your use of third-party platforms, such as Ultraviolet and Disney Movies Anywhere, may require your periodic consent for us to share content with the platform providers.

4.4. Digital Licenses for On Demand Content. Regardless of the use of the word "purchase," and except as set forth herein, all On Demand Content is offered for license, not purchase or sale, and is subject to this Agreement and any other license terms and conditions applicable to the On Demand Content, including limitations imposed by the use of any digital rights management technology. On Demand Content can be licensed in two ways:

4.4.1. Purchased On Demand Content: When you purchase On Demand Content, the payment of a purchase fee will entitle you to access the purchased On Demand Content for viewing on Authorized Devices an unlimited number of times over an indefinite period of time. Purchased On Demand Content will continue to be accessible if you are no longer a Fios TV customer, but your use of such On Demand Services will be subject to the terms of this Agreement.

4.4.2. Rented On Demand Content: When you rent On Demand Content, the payment of a rental fee will entitle you to access the rented On Demand Content for viewing on one or more Authorized Devices an unlimited number of times over a fixed period of time, typically 24 hours from the purchase or initial playback of the Rented On Demand Content. Upon the payment of the rental fee, you may be given the option to "Watch On This Screen" or "Watch on Any Screen".

4.4.2.1. If you select "Watch On This Screen", you can watch the Rented On Demand Content only on the specific On Demand Authorized Device on which the payment of the rental fee was made. The rented title will be downloaded to such On Demand Authorized Device, and it will be viewable as many times as you like for a viewing period of 24 (or in some cases up to 48) hours from the time you first initiate playback of the rented title. You must not delete the digital file from local storage prior to initiating playback, and you must initiate playback within 30 days of your rental purchase.

4.4.2.2. If you select "Watch On Any Screen", you will have 24 (or in some cases up to 48) hours from the time of the payment of your rental fee to watch (and if necessary, download) the title as may times as you like on any of your On Demand Authorized Devices. However, only one of your On Demand Authorized Devices may play back the Rental Content at any one time.

4.4.3. Upon the payment of either a purchase or rental fee, Verizon grants you a limited, non-exclusive, revocable, non-transferable license to use the On Demand Content solely for your personal, non-commercial/non-public, entertainment use.

4.5. Purchased On Demand Content Availability. Once you purchase or rent On Demand Content, you bear the responsibility for completing download and/or use and for all risk of loss of the purchased and downloaded On Demand Content. Verizon encourages you to download or access your Purchased On Demand Content immediately after purchase.

4.5.1.  Purchased On Demand Content may become unavailable for streaming (including streaming to your TV via a Verizon Fios TV set-top box) or re- download due to Content provider licensing and other restrictions, and Verizon will not be liable to you if Purchased On Demand Content becomes unavailable for further download, streaming and/or use.

4.5.2.  Re-delivery of purchased On Demand Content. Verizon can only re-deliver to you the digital files containing Purchased On Demand Content a maximum of two (2) times during any calendar year.

4.5.3.  Restrictions on Streamed Viewing. Verizon may limit the number of concurrent streams (including any streams delivered to the TV via a Fios TV set-top box) that are available from the same account at any one time. The maximum number of concurrent streams, the number of additional streams that may be purchased, and the concurrent availability of the same On Demand titles may vary. Streaming and downloading are available only in the U.S. and U.S. territories.

4.6.  Reservation of Rights. All Content provided by Verizon or its third party licensors on any website or other resource provided by Verizon at which On Demand Content may be purchased, including, without limitation, images, animations, previews, video programming, information services, audio, music, and text, irrespective of the manner or format in which such Content is delivered, is the property of Verizon or its licensors. You understand and acknowledge that your rights with respect to On Demand Content are limited by copyright law. All rights regarding use of On Demand Content not expressly granted in this Agreement are reserved by Verizon and/or its licensors.

4.7.  General Restrictions. The Services are intended for use within the United States. You agree to follow all rules and policies applicable to the Services, including required or automated updates, modifications and/or reinstallations of Access Software or other software and obtaining available patches to address security, interoperability and/or performance issues. You also agree: (i) to comply with all applicable laws, rules and regulations when using the Services and accessing or viewing On Demand Library Content; and (ii) not to reverse engineer, decompile, disassemble or otherwise tamper with or modify any of the security features, usage restrictions or other Service components for any reason (or help anyone else to do so).

5.  Data Charges. You acknowledge and agree that you may also incur data charges or fees from a wireless or internet service provider (which may be Verizon or a third party) for accessing online services or purchasing products and services through interactive options available through the Service. You are solely responsible for all charges or fees payable to Verizon or third parties, including all applicable taxes. In addition, you are solely responsible for protecting the security of credit card and other personal information provided to others in connection with such transactions.

# EXHIBIT C ACCEPTABLE USE POLICY

1. General Policy: Verizon reserves the sole discretion to deny or restrict your Service, or immediately to suspend or terminate your Service, if the use of your Service by you or anyone using it, in our sole discretion, violates the Agreement or other Verizon policies, is objectionable or unlawful, interferes with the functioning or use of the Internet or the Verizon network by Verizon or other users, or violates the terms of this Acceptable Use Policy ("AUP").

2. Specific Examples of AUP Violations. The following are examples of conduct which may lead to termination of your Service. Without limiting the general policy in Section 1, it is a violation of the Agreement and this AUP to:

   (a) access without permission or right the accounts or computer systems of others, to spoof the URL, DNS or IP addresses of Verizon or any other entity, or to penetrate the security measures of Verizon or any other person's computer system, or to attempt any of the foregoing;

   (b) transmit uninvited communications, data or information, or engage in other similar activities, including without limitation, "spamming", "flaming" or denial of service attacks;

   (c) intercept, interfere with or redirect email or other transmissions sent by or to others;

   (d) introduce viruses, worms, harmful code or Trojan horses on the Internet;

   (e) post off-topic information on message boards, chat rooms or social networking sites;

   (f) engage in conduct that is defamatory, fraudulent, obscene or deceptive;

   (g) violate Verizon's or any third party's copyright, trademark, proprietary or other intellectual property rights;

   (h) engage in any conduct harmful to the Verizon network, the Internet generally or other Internet users;

   (i) generate excessive amounts of email or other Internet traffic;

   (j) use the Service to violate any rule, policy or guideline of Verizon;

   (k) use the service in any fashion for the transmission or dissemination of images containing child pornography or in a manner that is obscene, sexually explicit, cruel or racist in nature or which espouses, promotes or incites bigotry, hatred or racism; or

   (l) download or use the Service in Cuba, Iran, North Korea, Sudan and Syria or to destinations that are otherwise controlled or embargoed under U.S. law, as modified from time to time by the Departments of Treasury and Commerce.

3. Copyright Infringement/Repeat Infringer Policy. Verizon respects the intellectual property rights of third parties. Accordingly, you may not store any material or use Verizon's systems or servers in any manner that constitutes an infringement of third party intellectual property

rights, including under US copyright law. In accordance with the Digital Millennium Copyright Act (DMCA) and other applicable laws, it is the policy of Verizon to suspend or terminate, in appropriate circumstances, the Service provided to any subscriber or account holder who is deemed to infringe third party intellectual property rights, including repeat infringers of copyrights. In addition, Verizon expressly reserves the right to suspend, terminate or take other interim action regarding the Service of any Subscriber or account holder if Verizon, in its sole judgment, believes that circumstances relating to an infringement of third party intellectual property rights warrant such action. These policies are in addition to and do not affect or modify any other rights Verizon may have under law or contract. If you believe that copyrighted material has been used in violation of this policy or otherwise been made available on the Service in a manner that is not authorized by the copyright owner, its agent or the law, please follow the instructions for contacting Verizon's designated Copyright Agent as set forth in Verizon's Copyright Policy located at http://www.verizon.com/copy.html.

4.  Verizon may, but is not required to, monitor your compliance, or the compliance of other subscribers, with the terms, conditions or policies of this Agreement and AUP. You acknowledge that Verizon shall have the right, but not the obligation, to pre-screen, refuse, move or remove any content available on the Service, including but not limited to content that violates the law or this Agreement.